UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                :

CROWN CLOTHING CORPORATION,    :
                 Plaintiff        :       Civil Action No. 05-10049 (NG)
                                :
               v.               :
                                :
RANDCORE, INC.,                     :
RAND INTERNATIONAL TRADING,     :
INC., ANDRE BERNARD, AND       :
RONALD BERNARD,               :
               Defendants     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION

### PRELIMINARY STATEMENT

Defendants Randcore, Inc. ("Randcore"), Rand International Trading, Inc.

("Rand"), and Andre Bernard (collectively, "Defendants") respectfully submit this memorandum

of law in support of their motion to dismiss the complaint for lack of personal jurisdiction

pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1]

On December 7, 2004, Plaintiff Crown Clothing Corporation ("Crown")

commenced this action by filing a complaint in the Superior Court of the Commonwealth of

Massachusetts, Suffolk County.  An amended complaint was filed on or about December 20,

2004.  On January 7, 2004, Defendants removed this action from the Massachusetts Superior

---

[1]      Defendant Ronald Bernard is represented by separate counsel, Gary R. Greenberg, Esq., of Greenberg Traurig, LLP.  In his answer to the amended complaint, which appears to have been served on January 7, 2005, Ronald Bernard asserted a lack of personal jurisdiction as his first affirmative defense.  (See Defendant Ronald Bernard's Answer to Amended Complaint, annexed as Exhibit "C" to the accompanying affidavit of Andre Bernard, sworn to on January 24, 2005, submitted in support of this motion.)

Court to this Court pursuant to 28 U.S.C. § 1441.  Defendants now seek to dismiss the action for lack of personal jurisdiction.

Defendants Randcore and Rand are New York corporations with offices in New York, New York.  Defendant Andre Bernard is a resident of Mount Kisco, New York.  None of the Defendants have engaged in activity in Massachusetts sufficient to justify their being called to answer in a court in the Commonwealth, and nearly every act identified in the amended complaint occurred in New York or Europe.  Accordingly, the claims against Defendants should be dismissed.  The relevant facts are set forth in the accompanying affidavit of Andre Bernard and will only be repeated as necessary.

<u>ARGUMENT</u>

<u>POINT I</u>

THIS COURT LACKS PERSONAL
<u>JURISDICTION OVER THE DEFENDANTS</u>

I.     <u>Standard of Review for Personal Jurisdiction</u>

To subject a non-resident defendant to its jurisdiction in a diversity case, a plaintiff must show both that the Massachusetts long-arm statute confers personal jurisdiction over the defendant and that the exercise of jurisdiction does not offend principles of due process.  <u>Lyle Richards Int'l, Ltd. v. Ashworth, Inc.</u>, 132 F.3d 111, 112 (1st Cir. 1997); <u>Foster-Miller, Inc. v. Babcock & Wilcox Canada</u>, 46 F.3d 138, 144 (1st Cir. 1995); <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 204 (1st Cir. 1994); <u>United Elec., Radio and Mach. Workers v. 163 Pleasant St. Corp.</u>, 960 F.2d 1080, 1086 (1st Cir. 1992).  The Massachusetts long-arm statute states that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this

commonwealth . . . ."  Mass. Gen. Laws ch. 223A, § 3(a).[2]  The Fourteenth Amendment's Due

Process Clause requires that a non-resident defendant have sufficient "minimum contacts" with

the forum state "such that maintenance of the suit does not offend 'traditional notions of fair play

and substantial justice.'"  International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154,

158 (1945) (citation omitted); see also Daynard v. Ness, Motley, Loadholt, Richardson & Poole,

P.A., 290 F.3d 42, 52 (1st Cir. 2002).  Because Massachusetts' long-arm statute extends personal

jurisdiction as far as permitted by the Due Process Clause of the Fourteenth Amendment, Tatro

v. Manor Care, Inc., 416 Mass. 763, 771, 625 N.E.2d 549, 553 (1994), the two-pronged inquiry

may be collapsed into one.  See Cambridge Literary Properties, Ltd. v. W. Goebel

Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 63 (1st Cir. 2002) ("[I]n the ordinary case, we

can proceed directly to the constitutional due process test."); Massachusetts Sch. of Law at

Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998) (stating that court "need

not pause to consider the particulars of the Massachusetts long-arm statute" because the plaintiff

"still would have to demonstrate that 'the exercise of jurisdiction pursuant to that statute

comports with the strictures of the Constitution.'") (citation omitted); Sawtelle v. Farrell, 70 F.3d

1381, 1388 (1st Cir. 1995) ("[W]hen a state's long-arm statute is coextensive with the outer limits

---

[2]        The Massachusetts long-arm statute provides:

> A court may exercise personal jurisdiction over a person, who acts
> directly or by an agent, as to a cause of action in law or equity arising
> from the person's (a) transacting any business in this commonwealth; (b)
> contracting to supply services or things in this commonwealth; (c)
> causing tortious injury by an act or omission in this commonwealth; (d)
> causing tortious injury in this commonwealth by an act or omission
> outside this commonwealth if he regularly does or solicits business, or
> engages in any other persistent course of conduct, or derives substantial
> revenue from goods used or consumed or services rendered, in this
> commonwealth . . . .  Mass. Gen. Laws ch. 223A, § 3.

of due process, the court's attention properly turns to the issue of whether the exercise of

personal jurisdiction comports with federal constitutional standards.").

        The burden of persuading the court that jurisdiction exists is ultimately upon the

plaintiff.  Massachusetts Sch. of Law, 142 F.3d at 34; see also Jana Brands, Inc. v. NexiFM, Inc.,

No. Civ.A. 01-12320RWZ, 2003 WL 164251, at *1 (D. Mass. 2003).  The plaintiff must go

beyond the pleadings and affirmatively prove that sufficient contacts exist between the defendant

and the forum state.  Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992); see also

Callahan v. Harvest Bd. Int'l, Inc., 138 F.Supp.2d 147, 152-53 (D. Mass. 2001) ("The

consideration of materials outside the complaint is appropriate in ruling on a motion to dismiss

for lack of personal jurisdiction.").

        A court may exercise either general or specific personal jurisdiction over a

defendant.  General jurisdiction focuses on the defendant's overall activities within the forum

state.  Specific jurisdiction, on the other hand, focuses solely on the defendant's activities in

connection with the particular event(s) at issue in the litigation.  See Helicopteros Nacionales de

Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & nn.8-9, 104 S.Ct. 1868, 1872 & nn.8-9

(distinguishing between "general" and "specific" jurisdiction).

II.    The Defendants' actions do not subject them to
        either general or specific jurisdiction in Massachusetts

        A.    The Defendants did not engage in systematic and
               continuous activities in Massachusetts sufficient to
               support this Court's exercise of general jurisdiction
               over any one of them

        The exercise of general jurisdiction over a non-resident defendant can be

established where the defendant "has maintained a continuous and systematic linkage with the

forum state . . . ."  Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st

Cir. 1999); see also Daynard, 290 F.3d at 51 ("General jurisdiction exists when the defendant has

engaged in 'continuous and systematic activity' in the forum, even if the activity is unrelated to

the suit.") (citation omitted).  Such a defendant "brings himself within the general jurisdiction of

that state's courts in respect to all matters, even those that are unrelated to the defendant's

contacts with the forum."  Phillips Exeter, 196 F.3d at 288.

      The Defendants have not conducted activities in Massachusetts to satisfy the test

for general jurisdiction.  Four cases illustrate that point.

      In Helicopteros, the Supreme Court held that Texas did not have general

jurisdiction over a Colombian corporation even though the defendant negotiated a contract there,

purchased $4,000,000 worth of helicopters, spare parts, and accessories from Bell Helicopter

Company in Texas, sent personnel to Bell's facilities in Fort Worth for training, and accepted

checks into its New York and Florida bank accounts that were drawn on a Houston bank.

Helicopteros, 466 U.S. at 410-11, 416-19, 104 S. Ct. at 1870, 1873-74.  The Court found that

these activities did not constitute "continuous and substantial" business contacts with Texas.

      Similarly, in Noonan v. Winston Co., 135 F.3d 85 (1st Cir. 1998), the First Circuit

found that this Court could not exercise general jurisdiction over a British company that sent an

employee to Massachusetts to photograph the plaintiff and received $585,000 in orders from a

Massachusetts company whose business it regularly solicited.  Noonan, 135 F.3d at 87, 92-93.

In Donatelli v. National Hockey League, 893 F.2d 459 (1st Cir. 1990), the First Circuit affirmed a

district court order which determined that the court in Rhode Island could not exercise general

jurisdiction over the defendant, which for ten years had provided league officials at exhibition

games played by the Bruins in Providence, sent scouts into Rhode Island, telecast games into Rhode Island, and sold products bearing the National Hockey League logo there.  Donatelli, 893 F.2d at 468 n.8 (citing Donatelli v. National Hockey League, 708 F.Supp. 31, 35-36 (1989)).

        In this action, the Defendants have fewer and far less substantial contacts with Massachusetts than the defendants in Helicopteros, Noonan, and Donatelli had with the potential forum states.  As detailed in the accompanying affidavit of Andre Bernard, neither Randcore nor Rand have ever applied for a license to do business in Massachusetts, and none of the Defendants have ever participated in business activity of any kind in the Commonwealth.  (See affidavit of Andre Bernard ("Bernard Aff."), sworn to on January 24, 2005, ¶ 11.)  The Defendants' activities in Massachusetts were not substantial, continuous, or systematic and, as New York corporations or officers of New York corporations, they had virtually no presence in the Commonwealth.  Accordingly, this Court lacks general jurisdiction over them.

        B.    This Court cannot exercise specific
              personal jurisdiction over the Defendants

        Where the defendant has not had continuous and systematic contacts with the forum state sufficient to establish general personal jurisdiction, the Court may exercise specific jurisdiction if the case "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum."  Phillips Exeter, 196 F.3d at 288; see also Massachusetts Sch. of Law, 142 F.3d at 34 ("Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities.").  The First Circuit has adopted a three-part test to determine whether the exercise of specific personal jurisdiction satisfies due process: (1) the claim must directly relate to or arise out of the defendant's contacts with the forum; (2) the

contacts must constitute purposeful availment of the benefits and protections afforded by the forum's laws; and (3) the exercise of jurisdiction must be reasonable in light of several factors that touch upon fundamental fairness.  Phillips Exeter, 196 F.3d at 288; Foster-Miller, 46 F.3d at 144.  The plaintiff must satisfy all three factors to support a finding of specific jurisdiction, and each claim must be analyzed separately.  Phillips Exeter, 196 F.3d at 288-89.  As discussed below, application of the First Circuit's "tripartite analysis" to the facts of this case compels the conclusion that this Court lacks specific personal jurisdiction over the Defendants.

        1.      <u>Relatedness</u>

Plaintiff asserts common law claims of breach of fiduciary duty, fraud, breach of contract, breach of the covenant of good faith and fair dealing, conversion, conspiracy, and a claim of unfair business practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 11.  The First Circuit applies a different relatedness analysis to contract and tort cases.  Plaintiff cannot satisfy the first prong of the First Circuit's jurisdictional test as it applies to any of its contract or tort claims.

        a.      <u>Contract Cases</u>

When assessing a contract claim, the contract, by itself, does not automatically establish minimum contacts.  <u>United States v. Swiss Amercian Bank, Ltd.</u>, 274 F.3d 610, 621 (1st Cir. 2001); <u>see also</u> <u>Phillips Exeter</u>, 196 F.3d at 290 (stating that "'relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state'") (quoting <u>Sawtelle</u>, 70 F.3d at 1389).  Rather, the court ascertains whether

the defendant's contacts with the forum were "instrumental either in the formation of the contract or in its breach." Phillips Exeter, 196 F.3d at 289; Massachusetts Sch. of Law, 142 F.3d at 35.

Plaintiff's claim for breach of contract is based on Rand's alleged failure to deliver linings to Albena. (See Amended Complaint ("Am. Cplt."), annexed as Exhibit "B" to the accompanying affidavit of Andre Bernard, ¶¶ 27-33.) The parties negotiated and formed their agreement with respect to Albena in New York, and they clearly contemplated that Rand would perform its contractual duties in New York or overseas, where, in fact, the Defendants conducted nearly all of their activities. (Bernard Aff. ¶¶ 4-8.) The only contacts with Massachusetts that could possibly relate to Plaintiff's breach of contract claim consist of approximately three trips made by Andre Bernard to Crown's offices in Massachusetts over a ten-year period, isolated follow-up telephone calls to Crown's offices there, and the invoices mailed by Rand and Randcore to Crown in Massachusetts. (Bernard Aff. ¶¶ 14-15.)

Those activities, however, were not instrumental to the formation or alleged breach of Plaintiff's agreement with Rand. Plaintiff misleadingly states that "Crown Clothing's payments on Rand's invoices created a sales contract between Rand and Crown Clothing." (See Am. Cplt. ¶ 30.) In reality, Plaintiff's payments on Rand's invoices did not *create* a contract between Crown and Rand, but rather constituted Crown's performance of its duties under a contract that had already existed. As set forth in Andre Bernard's supporting affidavit, the contract between Plaintiff and Rand was negotiated in New York. (Bernard Aff. ¶ 7.) Thus, the Defendants' contacts with Massachusetts were not instrumental to the formation of such contract.

8

Nor were Defendants' contacts with Massachusetts instrumental to the alleged breach of Plaintiff's contract with Rand.  The First Circuit has recognized that "a contract arguably is breached where a promisor fails to perform."  Phillips Exeter, 196 F.3d at 291.  Plaintiff alleges that Rand breached its contract with Plaintiff "through its failure to deliver linings to Albena Style for the overcoats."  (Am. Cplt. ¶ 32.)  Although Rand denies that it breached its contract with Plaintiff, it agrees that it was obligated to deliver the linings to Albena in Bulgaria.  (Bernard Aff. ¶ 6.)  Thus, none of Defendants' contacts with Massachusetts were instrumental to Rand's alleged breach of its contract with Plaintiff.

          b.     <u>Tort Cases</u>

In a tort case, the focus of the relatedness inquiry is on whether the defendant's contacts with the forum caused the injury or gave rise to the plaintiff's legal claim.  <u>Swiss American Bank</u>, 274 F.3d at 622; <u>see also</u> <u>Phillips Exeter</u>, 196 F.3d at 289 (in a tort case, the court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action"); <u>Massachusetts Sch. of Law</u>, 142 F.3d at 35 (if the plaintiff asserts a tort claim, the court "customarily look[s] to whether the plaintiff has established 'cause in fact (i.e., the injury would not have occurred "but for" the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)'") (citing <u>United Elec., Radio & Mach. Workers</u>, 960 F.2d at 1089).  The relevant contact is that which occurs within the forum state.  The in-forum effects of conduct *outside* the forum are insufficient to meet the relatedness requirement.  <u>Swiss American Bank</u>, 274 F.3d at 625; <u>Phillips Exeter</u>, 196 F.3d at 291; <u>Massachusetts Sch. of Law</u>, 142 F.3d at 36.

Plaintiff's tort claims are based on the alleged overpayments Crown made in reliance upon Defendants' representations that Albena could not supply linings for the overcoats that it was to manufacture for Crown and that Rand would therefore provide Albena with the linings. (Am. Cplt. ¶¶ 12-26, 34-46.)  Defendants' contacts with Massachusetts did not cause Plaintiff's alleged injuries or give rise to its tort claims.  Rather, Plaintiff's alleged injuries arose from Defendants' purported conduct in New York, where they allegedly misrepresented that Albena could not supply linings for the overcoats that it was to manufacture for Crown and that Rand would therefore provide Albena with the linings, and where Defendants allegedly converted Crown's money for their own use.  (See Bernard Aff. ¶ 7.)  Compare Phillips Exeter, 196 F.3d at 291 ("A breach of fiduciary duty occurs where the fiduciary acts disloyally.") with United States v. Swiss American Bank, Ltd., 191 F.3d 30, 37 (1st Cir. 1999) ("The legal injury occasioned by the tort of conversion is deemed to occur where the actual conversion takes place.").

Insofar as Plaintiff seeks to base this Court's jurisdiction over the Defendants on the alleged damages Crown sustained in Massachusetts, that argument is unavailing.  The First Circuit has repeatedly held, "'We have wrestled before with this issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative.'"  Swiss American Bank, 274 F.3d at 625 (quoting Massachusetts Sch. of Law, 142 F.3d at 36); see also Phillips Exeter, 196 F.3d at 291 (receipt of meager payment was "merely an in-forum effect of an extra-forum breach and, therefore, inadequate to support a finding of relatedness"); Sawtelle, 70 F.3d at 1390-91 (relatedness showing was "tenuous at best" when based on "effects" of defendants' negligence committed outside of forum).  Under the

circumstances, Defendants' contact with Massachusetts cannot form the basis of this Court's exercise of personal jurisdiction based on relatedness as it applies to breach of contract or tort.

    2.    <u>Purposeful availment</u>

       Even assuming that Defendants' conduct met the relatedness test, "the lack of purposeful availment nevertheless would defeat jurisdiction." <u>Phillips Exeter</u>, 196 F.3d at 291. The purposeful availment element of the due process inquiry requires the court to consider whether the defendant's contacts with the forum state "represent a purposeful availment of the privilege of conducting activities in [that state], thereby invoking the benefits and protections of [its] laws and making the defendant's involuntary presence before the state's courts foreseeable." <u>United Elec., Radio and Mach. Workers,</u> 960 F.2d at 1089. "The function of the purposeful availment requirement is to assure that jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous contacts' with the forum state." <u>Sawtelle</u>, 70 F.3d at 1391 (citation omitted).

       The two cornerstones upon which the purposeful availment component rests are voluntariness and foreseeability. <u>Ticketmaster</u>, 26 F.3d at 207. "The defendant's contacts with the forum state must be voluntary – that is, not based on the unilateral actions of a party or a third person." <u>Nowak v. Tak How Invs., Ltd.</u>, 94 F.3d 708, 716 (1st Cir. 1996); <u>see also</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183-84 (1985) ("Jurisdiction is proper . . . where the contacts proximately result from the actions by the defendant *himself* that create a 'substantial connection' with the forum State."). In this regard, the First Circuit has held that "[w]ithout evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship – say, by solicitation [citing <u>Nowak</u>, 94 F.3d at 716-17] – the

11

mere fact that the defendant willingly entered into a tendered relationship does not carry the day." Phillips Exeter, 196 F.3d at 292; see also Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 933 (1st Cir. 1985) ("[T]he fact that a nonresident enters into a single commercial contract with a resident of the forum state is not necessarily sufficient to meet the constitutional minimum for jurisdiction."). Further, "the defendant's contacts with the forum state must be such that he should reasonably anticipate being haled into court there." Nowak, 94 F.3d at 716.

The case of Lyle Richards In'tl, Ltd. v. Ashworth, Inc., 132 F.3d 111 (1st Cir. 1997), is instructive in this regard. In Lyle, a Massachusetts company made an unsolicited offer to serve as the defendant's purchasing agent. Lyle, 132 F.3d at 112. Lyle signed a contract in Massachusetts and then sent it to the defendant for execution in California. Id. The contract designated Lyle as the defendant's purchasing agent for footwear manufactured in China and Taiwan, but did not require the defendant to undertake any specific contractual responsibilities in Massachusetts. Id. All of the negotiations leading up to the contract took place "by phone and at meetings in California and China."

After the agreement was executed, the defendant communicated with Lyle in Massachusetts two or three times a week regarding contract performance and, from time to time, directed customers to bill Lyle directly in Massachusetts. Id. In addition, during the term of the contract, a representative of the defendant attended three trade shows in Massachusetts, accompanied on two occasions by a Lyle employee. Id. When its contract was terminated by the defendant, Lyle brought suit in Massachusetts for breach of contract and unfair trade practices under Mass. Gen. Laws ch. 93A, §§ 2, 11. Id.

Despite the defendant's regular communication with Lyle in Massachusetts, the First Circuit affirmed the district court's dismissal of the action for lack of personal jurisdiction. Id.  The court concluded that the defendant's contacts with Massachusetts were "purely incidental" and therefore insufficient to satisfy the requirements of the "transacting business" test under the Massachusetts long-arm statute.  Id. at 113.  That test, similar to the purposeful availment element of the due process inquiry, "is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party . . . with a view to determining whether the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable."  Id. at 112-13 (citations and quotation marks omitted).  As with purposeful availment, "[o]ften, the 'transacting business' test is importantly informed by ascertaining whether the nonresident party initiated or solicited the business transaction in Massachusetts."  Id. at 113.

Several factors that were central to the court's decision in Lyle bear a striking resemblance to the facts in this action and are thus equally applicable.  In Lyle, the defendant did not initiate or solicit the business transaction in Massachusetts.  Id. at 113.  Here, Crown approached Randcore with regard to the transaction that culminated in its agreement with Albena, and all negotiations leading up to the contract took place in New York and Bulgaria, not Massachusetts.  (Bernard Aff. ¶¶ 4-7.)

The Lyle court noted, moreover, that "most performance required from Lyle under the Agreement was to be rendered *outside* Massachusetts."  Id.  Specifically,

> [t]he Agreement did not even require that the internal
> administrative functions actually conducted by Lyle in
> Massachusetts be performed there . . . .  Nor does the Agreement
> indicate that Lyle either needed or intended to perform its "quality
> control" responsibilities in Massachusetts.  Rather, most of its core

contractual responsibilities relating to the inspection of
merchandise would have had to have been performed in China or
Taiwan, rather than Massachusetts.

Id. The court concluded, therefore, that Lyle's "performance of various attendant chores in

Massachusetts was incidental to the formation of the Agreement." Id.

Similarly, here, contract performance took place outside of Massachusetts.

Randcore located Albena in Bulgaria, where it supervised the production of the coats

manufactured for Crown. (Bernard Aff. ¶¶ 4-5, 14.) Rand was to purchase the linings in

Bulgaria and deliver them to Albena there. (Bernard Aff. ¶ 6.) Thus, as in Lyle, the Defendants'

core contractual responsibilities were to be performed outside of Massachusetts. Insofar as Mr.

Bernard traveled to Boston on three or four occasions over the past decade, those trips were

made for a limited purpose and were merely incidental to Randcore's performance of its

contractual duties. (Bernard Aff. ¶ 14.)

Likewise, any written or telephonic communications Defendants may have had

with Plaintiff, including the invoices that were mailed to Crown in Massachusetts, were simply

an expedient means of conducting business and obtaining compensation for services performed

outside of the forum. See CVS Corp. v. Taubman Ctrs., Inc., 225 F.Supp.2d 120, 126 (D.R.I.

2002) (Michigan-based leasing agent was not subject to personal jurisdiction in Rhode Island

even though it had ongoing correspondence with and sent invoices to plaintiff in Rhode Island,

where agent did not reach out to plaintiff in Rhode Island to solicit business and its

correspondence with plaintiff was "simply a necessary means of performing" under its

contracts). Surely, these communications cannot be construed as affirmative acts by which

Defendants purposefully availed themselves of the privilege of conducting activities in

Massachusetts.[3]

      3.    <u>Reasonableness of exercise of jurisdiction</u>

      Reasonableness, the third element of the due process inquiry, is examined in light

of the following "gestalt" factors:

> (1) the defendant's burden of appearing, (2) the forum state's
> interest in adjudicating the dispute, (3) the plaintiff's interest in
> obtaining convenient and effective relief, (4) the judicial system's
> interest in obtaining the most effective resolution of the
> controversy, and (5) the common interests of all sovereigns in
> promoting substantive social policies.

---

[3]    Plaintiff cannot argue that Defendants are subject to this Court's jurisdiction because Crown paid Randcore's and Rand's invoices with funds deposited in banks located in Massachusetts.  (<u>See</u> Am. Cplt. ¶ 6.)  In <u>Helicopteros</u>, the Supreme Court held that the defendant's acceptance of a check drawn on a Texas bank

> is of negligible significance for purposes of determining whether [the
> defendant] had sufficient contacts in Texas. . . .  Common sense and
> everyday experience suggest that, absent unusual circumstances, the bank
> on which a check is drawn is generally of little consequence to the payee
> and is a matter left to the discretion of the drawer.  Such unilateral
> activity of another party or a third person is not an appropriate
> consideration when determining whether a defendant has sufficient
> contacts with a forum State to justify an assertion of jurisdiction.

<u>Helicopteros</u>, 466 U.S. at 417, 104 S.Ct. at 1873.

Nowak, 94 F.3d at 717; Foster-Miller, 46 F.3d at 150; Ticketmaster, 26 F.3d at 209.

"The purpose of the gestalt factors is to aid the court in achieving substantial justice,

particularly here the minimum contacts question is very close."  Nowak, 94 F.3d at 717.

"In such cases, the gestalt factors may tip the constitutional balance."  Id.  The First

Circuit has therefore adopted a "sliding scale" approach:

> the weaker the plaintiff's showing on the
> first two prongs (relatedness and purposeful
> availment), the less a defendant need show
> in terms of unreasonableness to defeat
> jurisdiction.  The reverse is equally true: an
> especially strong showing of reasonableness
> may serve to fortify a borderline showing of
> relatedness and purposefulness.

Ticketmaster, 26 F.3d at 210.  An analysis of the gestalt factors leads to the conclusion

that the exercise of personal jurisdiction over the Defendants in this Massachusetts court

would be unreasonable.

        a.     The Burden on Defendants

Admittedly, "for this particular gestalt factor to have any significance, the

defendant must demonstrate that 'exercise of jurisdiction in the present circumstances is

onerous in a special, unusual, or other constitutionally significant way.'"  Nowak, 94 F.3d

at 718 (quoting Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994)).  The substantial cost and

inconvenience of defending an action far from Defendants' homes and place of business

creates an onerous and intolerable burden.  Andre and Ronald Bernard reside in New

York, and they conduct their business in Manhattan.  (Bernard Aff. ¶¶ 2, 10, 16.)  If the

Defendants are compelled to litigate this action in Massachusetts, it will be necessary to

transport witnesses and records from New York.  (Bernard Aff. ¶ 16.)  The Bernards will

be obliged to travel repeatedly to the Commonwealth to assist in the preparation of the case, to appear at hearings, and to participate in discovery.  (Bernard Aff. ¶ 16.)

The Defendants have retained local counsel to appear on their behalf for the limited purpose of filing this motion.  It will be logistically difficult for local Massachusetts counsel to work with the Bernards and any other non-party witnesses familiar with the facts underlying the suit to prepare the case for trial.  Travel to and from Massachusetts will disrupt the Bernards' business and personal affairs and significantly increase the cost of this litigation.  In the end, they will be required to devote substantial resources to litigating in Massachusetts even though they have no contacts whatsoever with the Commonwealth.  (See Bernard Aff. ¶ 16.)  Thus, the burden of litigating this action in a distant forum will decidedly rest on Defendants, not Plaintiff.

      b.      The Forum's Interest in Adjudicating the Dispute

"The forum state has a demonstrable interest in exercising jurisdiction over one who causes tortious injury within its borders."  Id. at 211.  It also has "a legitimate and constitutional interest in regulating commercial transactions that are performed within its borders, as well as in enforcing the contracts entered by its businesses and in protecting those businesses . . . ."  Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 12 (1st Cir. 2002).  However, as the First Circuit has suggested, these interests are not compelling where the Defendants' alleged acts were not committed in the forum state.  See Ticketmaster, 26 F.3d at 211.  Therefore, because the Defendants' purported acts were not committed in Massachusetts, this factor weighs in Defendants' favor.

c.    The Plaintiff's Interest in Convenient and Effective Relief

While Crown prefers to litigate in Massachusetts, prosecuting the action in the Commonwealth will be less convenient than litigating in New York. Crown may be required to obtain and enforce subpoenas against non-party witnesses in New York and to travel to New York to examine non-party witnesses.

In contrast, if the action is litigated in New York, only Richard Silverman may be obliged to travel for his examination before trial. Given that Mr. Silverman travels to New York on a regular basis and maintains a residence there, (see Bernard Aff. ¶¶ 3, 8, 16), this will not impose an undue hardship on him. We respectfully submit that this factor favors Defendants.

The fourth and fifth factors do not appear to favor either party. The most effective resolution of the dispute would not necessarily take place in Massachusetts, and this case does not involve substantial social policies.

In sum, an application of the gestalt factors does not lead to the conclusion that this action should be litigated in Massachusetts. Moreover, given that the relatedness and purposeful availment analysis weighs strongly in Defendants' favor, the exercise of personal jurisdiction by this Court would be improper.

POINT II

IN THE EVENT THE COURT IS NOT
INCLINED TO DISMISS THIS ACTION FOR
LACK OF PERSONAL JURISDICTION,
THE CASE SHOULD BE TRANSFERRED TO
THE SOUTHERN DISTRICT OF NEW YORK

Pursuant to 28 U.S.C. § 1631, a court lacking jurisdiction "shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . . ." 28 U.S.C. § 1631. Accordingly, in the event the Court is not inclined to dismiss this action for lack of personal jurisdiction, the case should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1631.[4] But see Pedzewick v. Foe, 963 F.Supp. 48, 50 (D. Mass. 1997) (holding that Section 1631 applies only to cases where a court lacks subject matter jurisdiction).

---

[4]    Although Title 28 contains two other transfer provisions, they are inapplicable in this case. Section 1406(a), which allows transfer when venue is "wrong," has no application to this case because it is a removed action. The venue of a removed action is governed by 28 U.S.C. § 1441(a), which provides that the proper venue of a removed action is "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); see also Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 666, 73 S.Ct. 900, 902 (1953). Thus, the District of Massachusetts is the proper venue for an action removed from the Massachusetts Superior Court. See JMTR Enterprises, L.L.C., 42 F.Supp.2d 87, 99 (D. Mass. 1999) (District of Massachusetts was proper venue for action removed from Middlesex Superior Court).

Section 1404(a), which codifies the doctrine of forum non conveniens, "'can never apply if there is absence of jurisdiction or mistake of venue.'" Albion v. YMCA Camp Letts, 171 F.3d 1, 2 (1st Cir. 1999) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504, 67 S.Ct. 839, 841 (1947)). If the Court determines that it may exercise personal jurisdiction over the Defendants, the transfer of this action to the Southern District of New York would then be appropriate under 28 U.S.C. § 1404(a).

## CONCLUSION

For all of the foregoing reasons, this Court should dismiss the claims against Defendants for lack of personal jurisdiction.  In the event the Court denies Defendants' motion to dismiss, the case should be transferred to the United States District Court for the Southern District of New York.

Dated: Boston, Massachusetts
          January 25, 2005

                              Respectfully submitted,

                              Defendants Randcore, Inc., Rand
                              International Trading, Inc., Andre Bernard,
                              and Ronald Bernard

                              By their Attorneys,

                              SUGARMAN, ROGERS, BARSHAK
                                & COHEN, P.C.


          By:     __/s/ Jeffrey S. Stern_____
                              Jeffrey S. Stern
                    101 Merrimac Street
                    Boston, Massachusetts 02114
                    (617) 227-3030
                    BBO No. 479460

<u>CERTIFICATE OF SERVICE</u>

I, Jeffrey S. Stern, hereby certify that on the 25th day of January, 2005, I served the within memorandum of law by mailing a copy thereof, postage prepaid, to the following counsel of record:

John C. Wyman, Esq.
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, Massachusetts 02110

Gary R. Greenberg, Esq.
Greenberg Traurig
One International Place
Boston, Massachusetts 02110

_/s/ Jeffrey S. Stern _____
Jeffrey S. Stern