UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
:
CROWN CLOTHING CORPORATION,   :   Civil Action No. 05-10049 (NG)
        Plaintiff   :
:
      v.   :   AFFIDAVIT OF
:   ANDRE BERNARD IN
RANDCORE, INC.,   :   SUPPORT OF DEFENDANTS'
RAND INTERNATIONAL TRADING,   :   MOTION TO DISMISS THE
INC., ANDRE BERNARD, AND   :   <u>COMPLAINT</u>
RONALD BERNARD,   :
        Defendants   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

STATE OF NEW YORK   )
                                ) ss:
COUNTY OF NEW YORK  )

        ANDRE BERNARD, being duly sworn, deposes and says:

        1.     I am an individual defendant in this action. I am also the president of Randcore, Inc. ("Randcore") and Rand International Trading, Inc. ("Rand"), the corporate defendants in this action. I submit this affidavit in support of the motion of Defendants Randcore, Rand and Andre Bernard to dismiss this action for lack of personal jurisdiction. As demonstrated in greater detail below, I did not engage in commercial activity in Massachusetts -- individually, or on behalf of Randcore or Rand -- which would subject me to jurisdiction in the Commonwealth.

        2.     Rand, incorporated in 1975, and Randcore, incorporated in 1993, are both New York corporations with offices in Manhattan (New York County), New York. Randcore and Rand are engaged in the business of buying and selling textiles and clothing products. Neither Rand, Randcore, nor the individual defendants maintain any contact with Massachusetts.

3. While Crown Clothing Corporation ("Crown") is a Massachusetts corporation, it has conducted business in New York since 1978. (A copy of Crown's Application for Authority, which appears to be dated July 24, 1978, is annexed as Exhibit "A"). Significantly, Crown maintains a showroom in Manhattan, a warehouse facility immediately outside of Manhattan in Bayonne, New Jersey, and its Chief Executive Officer, Richard Silverman, maintains a personal residence in Manhattan. Crown's presence in New York is constant and unmistakable; the Defendants' presence in Massachusetts is virtually non-existent.

4. In late 1996 or early 1997, Richard Silverman approached Randcore in New York to request that it locate an overseas factory that could manufacture Crown's overcoats at a cost lower than that which Crown had been paying. During these conversations in Randcore's offices, Randcore agreed that it would assist Crown in locating a factory to manufacture the coats, submit samples of the coats to be manufactured to Crown, and, from time to time, supervise the production of the coats.

5. Pursuant to their agreement, Randcore introduced Crown to a Bulgarian corporation now known as Albena Style AD ("Albena"). Shortly thereafter, Crown entered into an agreement with Albena for the purchase of men's overcoats. All of the negotiations between Crown and Albena were conducted at the latter's offices in Bulgaria.

6. After Albena was engaged, it was discovered that Albena could not purchase or manufacture linings for the overcoats. Therefore, it was initially agreed that Rand would supply Albena with linings purchased in Bulgaria and that Albena would then sew the linings into the overcoats. Rand would be paid by Crown for the cost of the linings based upon

invoices that Rand sent from New York. Randcore would also be paid by Crown for its services based upon invoices that it sent from New York.

7. Because Crown maintained an office in New York and because Mr. Silverman was in Manhattan on at least a bi-weekly basis, all of our meetings regarding the manufacture of the coats and linings were conducted in New York, all documents between us were either drafted or executed in New York, and all coats were delivered from Albena to Crown in New York or New Jersey after Crown, not Rand or Randcore, took title and possession of the garments in Bulgaria.[1] In addition, for several years during the 1990s, I met with Mr. Silverman approximately every two weeks at Randcore's New York office, Crown's New York showroom, or at Crown's warehouse in New Jersey, for the purpose of discussing every issue relating to the garments.

8. To this day, Mr. Silverman and I continue to meet on a regular basis to discuss issues that arise with respect to Crown's arrangement with Albena and other overseas manufacturers. All of our meetings take place in New York. In fact, I last met Mr. Silverman there on January 12, 2005.

9. In or around 1997, Mr. Silverman insisted that I sign the "Agency Agreement" that is annexed as Exhibit "A" to the amended complaint. (A copy of the amended complaint is annexed as Exhibit "B"). Even though the Agreement was back-dated by two years, he claimed that he needed it for Crown's protection in the event that Crown was audited by United States Customs' officials. He promised that he would not hold Randcore to the express terms of the Agreement and that it was drafted solely to avoid having to pay various tariffs and

---

[1] **Error! Main Document Only.** In approximately 2002, Mr. Silverman became ill and was briefly hospitalized. During this time frame, he did not conduct Crown's business in New York.

penalties that could be imposed against Crown. I signed the Agreement on Randcore's behalf in reliance upon Mr. Silverman's representation that he would not seek to enforce the Agreement at a later date. Although I signed the Agreement in 1997, the purported term of the Agreement was from March 1, 1995 to December 31, 1996. Consequently, the Agreement expired prior to the parties' contract with respect to Albena.

10. I reside in Mount Kisco, New York, and have been a resident of the State of New York my entire life. My brother, Ronald Bernard, who is also a defendant in this action, has also been a lifelong resident of the State of New York. While he served his Answer to the Amended Complaint, a copy of which is annexed as Exhibit "C", he asserted lack of personal jurisdiction as his first affirmative defense.

11. Randcore and Rand do not have a place of business in Massachusetts and have never carried on business in the Commonwealth in any capacity. Neither Randcore nor Rand have ever applied for a license to do business in Massachusetts and at no time have the corporations ever authorized suit to be brought against them there. Neither entity advertises in Massachusetts or participates in business activity of any kind in that jurisdiction.

12. Randcore, Rand, and I have not engaged in activity in Massachusetts sufficient to justify our being called to answer in a court there. We did not participate in the local economy or avail ourselves of the benefits and protections of Massachusetts.

13. On the other hand, Crown sought out the Defendants in New York and conducted all business relations with them in Manhattan, New Jersey, or overseas, but rarely, if ever, in Massachusetts.

---

Apart from this period, however, Crown's business with Randcore and Rand was conducted in New York or Bulgaria.

14. The only reference in the Amended Complaint to the Defendants' contacts in Massachusetts appears in paragraph six of the pleading in which it is alleged that I "periodically" met with and regularly telephoned Crown employees in Massachusetts, sent letters and reports to Crown in Massachusetts, and that Randcore and Rand sent invoices to Crown in Massachusetts. Randcore and Rand did in fact forward invoices to Crown at their offices in Massachusetts. However, my "periodic" meetings with Crown representatives in Massachusetts were limited to three or four meetings over the course of the last decade. I last traveled to Boston approximately two or three years ago to inspect a garment that Crown purchased from Albena. Before then, I visited Crown's offices in Massachusetts four years earlier for the same reason. However, all other business meetings occurred in Randcore's Manhattan offices, Crown's New York showroom, Crown's warehouse facility in New Jersey, or in Bulgaria. Contrary to Plaintiff's allegations, I rarely, if ever, forwarded reports or letters by mail to Crown.

15. Crown also alleges that I regularly telephoned its representatives in Massachusetts. In truth, at all times relevant to the complaint, Mr. Silverman called to speak with me approximately one or two times each week. These calls, however, often took place while he was in Manhattan since he was regularly in New York. It was unusual for me to call him in Massachusetts, unless I was returning a telephone call he placed to me. While I also spoke to Mr. Silverman's colleagues Robert Graci and Carol Reed over the years, many of those calls had no bearing on the issues involved in this lawsuit. At all times, my primary -- and nearly exclusive -- contact was with Mr. Silverman and the telephone calls we conducted were usually while we were both in New York.

16.	Litigating these claims in Massachusetts will place an unfair and intolerable burden on the Defendants.  We conduct our business in Manhattan and if we are compelled to litigate this action in Massachusetts, it will be necessary to transport witnesses and records from New York, participate in discovery and attend proceedings in Court.  In the end, we will be required to devote substantial resources to litigating in Massachusetts even though we have no contacts whatsoever with the Commonwealth.  On the other hand, Crown regularly conducts business in New York at its showroom and warehouse and Mr. Silverman's Manhattan residence confirms his commitment to transacting business in Manhattan.  Crown will not be burdened if this action is litigated in New York; the Defendants, however, will be severely prejudiced if they are forced in litigate in Massachusetts.

17.	I have no objection to resolving all outstanding claims between the parties, including the fact that Crown owes the Defendants in excess of $100,000 based on unpaid invoices.  However, those claims should only be litigated in New York, not in Massachusetts, and I respectfully request that the Court decline to exercise personal jurisdiction over the Defendants so this action can be litigated in the appropriate forum.

　　　　　　　　　　　　　　　　　　　　　　　　_/s/ Andre Bernard_____
　　　　　　　　　　　　　　　　　　　　　　　　　　ANDRE BERNARD

Sworn to before me
on January 24, 2005

_____
　　Notary Public

M:\MEMO\KANFER\B\bernardaff.1memo.wpd

## CERTIFICATE OF SERVICE

I, Jeffrey S. Stern, hereby certify that on the 25th day of January, 2005, I served the within affidavit by mailing a copy thereof, postage prepaid, to the following counsel of record:

> John C. Wyman, Esq.
> Murtha Cullina LLP
> 99 High Street, 20th Floor
> Boston, Massachusetts 02110
>
> Gary R. Greenberg, Esq.
> Greenberg Traurig
> One International Place
> Boston, Massachusetts 02110

> /s/ Jeffrey S. Stern
> Jeffrey S. Stern