|  |  |
|---|---|
| CROWN CLOTHING CORPORATION, )<br>       Plaintiff )<br> )<br>v. )<br> )<br>RANDCORE, INC., )<br>RAND INTERNATIONAL TRADING, )<br>INC., ANDRE BERNARD, AND )<br>RONALD BERNARD, )<br>       Defendants )<br> ) | CIVIL ACTION NO. 05-10049 (NG)<br><br>**ORAL ARGUMENT REQUESTED** |

**OPPOSITION OF PLAINTIFF CROWN CLOTHING INC. TO
THE MOTION OF DEFENDANTS RANDCORE, INC., RAND
INTERNATIONAL TRADING, INC. AND ANDRE BERNARD
TO DISMISS THE COMPLAINT**

The plaintiff Crown Clothing Corporation ("Crown Clothing") opposes the Motion of the Defendants Randcore, Inc. ("Randcore") Rand International Trading, Inc. ("Rand") and Andre Bernard (collectively referred to as the "Defendants") to Dismiss the Complaint. An Affidavit of Robert R. Graci, the Vice President of Crown Clothing, is filed herewith.

**BACKGROUND**

Crown Clothing is a Massachusetts corporation with a principal place of business at 340 Vanderbilt Avenue, Norwood, MA 02062. [Affidavit of Robert R. Graci ("Graci Aff.), ¶ 2]. The defendants Randcore and Rand are both New York corporations. [Affidavit of Andre Bernard ("Bernard Aff."), ¶ 1]. Andre Bernard is the President of both Randcore and Rand. [Bernard Aff., ¶ 1].

On or about March 1, 1995, Crown Clothing entered into an agency agreement with Randcore ("Agreement") in which Andre Bernard agreed to represent Crown Clothing's interests and to serve as agent for Crown Clothing in the Czech Republic, Slovakia and Bulgaria. [Graci Aff., ¶ 4]. The Agreement was negotiated primarily over the telephone. [Graci Aff., ¶ 5]. The

negotiations were primarily conducted between Robert R. Graci ("Graci"), on behalf of Crown Clothing, and Andre Bernard, on behalf of Randcore, while Graci was in Massachusetts and Andre Bernard was in New York. [Graci Aff., ¶ 5]. In addition, the Agreement was negotiated through the use of mail and fax correspondence. [Graci Aff., ¶ 5].

In 1997, pursuant to Randcore's Agreement with Crown Clothing, Andre Bernard introduced Crown Clothing to Albena Style AD ("Albena"). [Graci Aff., ¶ 6]. Andre Bernard, acting on behalf of Crown Clothing. negotiated a contract to have Albena manufacture men's overcoats for Crown Clothing. [Graci Aff., ¶ 6]. Andre Bernard contacted Graci in Massachusetts during the course of the negotiations to discuss the terms of the contract with Albena. [Graci Aff., ¶ 6]. Substantially all of these discussions between Andre Bernard and Crown Clothing were conducted over the telephone with Graci in Massachusetts. [Graci Aff., ¶ 6].

During the negotiations, Andre Bernard represented to Crown Clothing that Albena could not provide linings for overcoats that Albena would manufacture for Crown Clothing. [Graci Aff., ¶ 7]. During the negotiations, Andre Bernard also represented to Crown Clothing that his company, Rand International, Inc. ("Rand"), would purchase and provide linings to Albena to be sewn into the overcoats and that he would invoice Crown for the cost of the linings he purchased. [Graci Aff., ¶ 7].

Since 1997, Andre Bernard, through Rand, sent invoices to Crown Clothing in Massachusetts for linings allegedly installed in the overcoats manufactured by Albena and sold to Crown Clothing. [Graci Aff., ¶ 12 and Exhibit D to the Graci Aff.]. Crown Clothing relied on these invoices as being a true representation of linings provided by Rand to Albena. [Graci Aff., ¶ 13]. In reliance on these invoices, Crown Clothing paid Rand by wire transfers and checks

drawn on Crown Clothing's bank located in Massachusetts. [Graci Aff., ¶ 13]. Since 1997, Crown Clothing has paid Rand approximately $985,575 for linings to be sewn into overcoats manufactured by Albena for Crown Clothing. [Graci Aff., ¶ 16]. Since 1997, the per unit invoice price for the linings has changed three (3) times from $2.63, $2.88 and $3.21 per lining. [Graci Aff., ¶ 15]. These changes were a result of negotiations between Crown Clothing and Rand, many of which occurred in telephone calls placed by Andre Bernard to Crown Clothing in Massachusetts. [Graci Aff., ¶ 15].

In September, 2004, during a telephone conversation with the Executive Director of Albena, Crown Clothing learned that Andre Bernard's statement that Albena could not provide linings for overcoats manufactured for Crown Clothing was false, that the Rand invoices falsely represented that Rand provided linings to Albena for the overcoats. [Graci Aff., ¶ 17]. Albena informed Crown Clothing that Albena had purchased and installed linings into the overcoats manufactured for Crown Clothing and that the cost of these linings was included in the invoiced price paid by Crown Clothing to Albena. [Graci Aff., ¶ 17]. When Crown Clothing confronted Andre Bernard with the fact that Albena had provided linings for the overcoats, Andre Bernard drove to Crown Clothing's offices in Norwood Massachusetts to meet with me and Richard Silverman to attempt to resolve the linings issue. [Graci Aff., ¶ 18].

## APPLICABLE LEGAL STANDARDS

On a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of proving that the court can exercise jurisdiction over the defendant. <u>Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n</u>, 142 F.3d 26, 34 (1st Cir. 1998). In determining whether a plaintiff has met its burden, the court must "take specific facts affirmatively alleged by the

plaintiff as true (whether or not disputed) and construe them in a light most congenial to the plaintiff's jurisdictional claim." Id.

In Massachusetts, whether a federal court exercising diversity jurisdiction may exercise specific personal jurisdiction over a non-resident defendant is a two step process. First, jurisdiction must be authorized by the Massachusetts long-arm statute, Mass. Gen Laws ch. 223A, § 3. Ticket Master New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994). Second, the court must find that the court's exercise of jurisdiction does not offend principles of due process. Id. However, since the Massachusetts long-arm statute reaches to the full extent of the Due Process Clause of the Fourteenth Amendment, the plaintiff need only demonstrate the court's exercise of jurisdiction comports with due process. Cambridge Literary Properties Ltd. v. W. Gobel Porzellanfabrik G.m.b.H & Co. Kg., 295 F.3d 59, 63 (1st Cir. 2002); see also Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995) ("[W]hen a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with the federal constitution standards").

The Due Process Clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-resident defendant only when the defendant has sufficient minimum contacts with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Noonan v. The Winston Company, 135 F.3d 85, 90 (1st Cir. 1998). A court may exercise either general or specific jurisdiction over a defendant. General jurisdiction is exercised in the case where a defendant's contacts with the forum are so "continuous and systematic" that a court's exercise of personal jurisdiction is reasonable notwithstanding that the defendant's contacts do not relate to the plaintiff's claim. Specific jurisdiction may be exercised

over a defendant when "there is a demonstrable nexus between a plaintiff's claims and a defendant's forum based activities." Massachusetts School of Law, 142 F.3d at 34.

## ARGUMENT

I. THE DEFENDANTS HAVE SUFFICIENT MINIMUM CONTACTS WITH MASSACHUSETTS FOR THIS COURT TO EXERCISE SPECIFIC JURISDICTION

Sufficient minimum contacts are present for purposes of exercising specific jurisdiction if: (1) the plaintiff's claim directly relates or arises out of the defendant's contacts with the forum; (2) the defendant's contacts with the forum constitute a purposeful availment of the benefits and protections of the forum's laws; and (3) the exercise of jurisdiction is reasonable based on several factors that focus on fundamental fairness. Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). The plaintiff must meet its burden with respect to all three factors for each defendant before the court can exercise specific jurisdiction. Id. at 288-289. "It is well settled that, in a multi-count complaint, as in this case, if a court has personal jurisdiction over [a] defendant with respect to one count, it has personal jurisdiction with respect to all counts." Home Owners Funding Corp. of America v. Century Bank, 695 F. Supp. 1343, 1345 (D. Mass 1988); see also Calder v. Jones, 465 U.S. 783, 790 (1984) ("Each defendants' contacts with the forum must be assessed individually.") In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum and the litigation." Calder, 465 U.S. at 789. As discussed below, in accordance with the three pronged test set forth above, each of the Defendants have sufficient minimum contacts with Massachusetts for this court to exercise specific jurisdiction.

A.    Relatedness

The relatedness prong of the specific jurisdiction analysis is a "flexible, relaxed standard." Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994). The relatedness prong requires that plaintiff prove that "the action directly arises out of the specific contacts between the defendant and the forum state." Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 714 (1st Cir 1996) ("As an initial matter we know that the relatedness requirement focuses on the nexus between the defendant's contacts and the plaintiff's cause of action.") The plaintiff does not need to demonstrate that the defendant had physical contact with the forum in order to satisfy the relatedness prong. Phillips Exeter, 196 F.3d at 289-290.

The First Circuit approaches the relatedness inquiry differently depending on whether the plaintiff has asserted a contract or a tort claim. Massachusetts School of Law, 142 F.3d at 35. Here, Crown Clothing has asserted contract claims against Randcore and Rand, and various tort claims against Randcore, Rand and Andre Bernard including breach of fiduciary duty, fraud, conspiracy, conversion and unfair and deceptive business practices claim under M.G.L. ch. 93A, §11. As discussed below, Crown Clothing's contract and tort claims against the Defendants directly relate the Defendants' contacts with Massachusetts.

1.    Contract Claims

In determining the relatedness of a contact claim the plaintiff must prove that "the defendant's contacts with the forum were instrumental either in the formation of the contract or its breach." Phillips Exeter, 196 F.3d at 289.

a.    Randcore

Crown Clothing's contract claim against Randcore is based on Randcore's breach of the covenant of good faith and fair dealing implied in the Agreement. [Amend. Compl. ¶, 35]. Starr

v. Fordham, 420 Mass 178, 194 (1995) ("The implied covenant of good faith and fair dealing is a contractual obligation.")

First, with respect to formation, Randcore's contacts with Massachusetts were instrumental to the formation of the Agreement. In Massachusetts, a contract is formed when there is evidence of a "bargained-for-exchange" -- offer, acceptance, and consideration. Quinn v. State Ethics Commission, 401 Mass. 210, 216 (1987). Here, the Agreement was formed through telephone, fax and mail communications between Andre Bernard in New York and Crown Clothing in Massachusetts. [Graci Aff. ¶, 5]. Randcore, through its President Andre Bernard, initiated several telephone calls to Crown Clothing in Massachusetts in connection with the negotiation of the Agreement. [Graci Aff ¶, 5]. Crown Clothing drafted the Agreement in Massachusetts and mailed it to Randcore in New York where Andre Bernard signed it and mailed back to Crown Clothing in Massachusetts. [Graci Aff. ¶, 5].

Second, with respect to breach, Randcore had sufficient contacts with Massachusetts related to its breach of the Agreement. The First Circuit has held "that a contract is arguably breached where a promisior fails to perform." Phillips Exeter, 196 F.3d at 291. Here, Randcore failed its promise to perform under the Agreement pursuant to the implied covenant of good faith and fair dealing when Andre Bernard, while acting as Crown Clothing's agent under the Agreement, made false statements to Crown Clothing in Massachusetts regarding Albena's inability to provide linings. Randcore also breached the Agreement when Andre Bernard sent invoices to Crown Clothing in Massachusetts for linings that were never provided to Albena. [Graci Aff., ¶¶, 12 and 17].

The fact that Randcore alleges that some of the events concerning the formation and performance of the Agreement occurred in New York does not preclude this Court from

exercising jurisdiction over Randcore. [Bernard Aff. ¶¶, 4, 13 and 15]. It is well settled that, "a defendant need only have one contact with the forum state [for purposes of personal jurisdiction], so long as the contact is meaningful." Nowak, 94 F.3d at 717 (affirming the denial of the defendants motion to dismiss); see also Good Hope Industries, Inc. v Ryder Scott Co., 378 Mass. 1, 12 citing Gardner Engineering Corp. v. Page Engineering Corp., 484 F.2d 27, 31 (8th Cir. 1973) (it is immaterial that the contract in question may have had significant connections with states other than the forum state [because] the plaintiff is not required to choose the forum with the most significant contacts as a matter of jurisdiction"). Here Randcore's contacts with Massachusetts were meaningful because they were directly related to the formation and Randcore's breach of the Agreement. Accordingly, Crown Clothing has met its burden under the relatedness prong with respect to its contract claim against Randcore.

     b.  Rand

Crown Clothing's contract claim against Rand is based on Rand's failure to deliver linings to Albena which were to be incorporated into the overcoats being manufactured by Albena (the "Sales Contracts"). [Amended Compl. ¶, 32]. Rand's contacts with Massachusetts were instrumental to the formation of the Sales Contracts. First, since 1997 Rand has sent invoices to Crown Clothing in Massachusetts for linings that were allegedly provided to Albena to be sewn into the overcoats. [Graci Aff., ¶, 12]. Since 1999, Rand has sent 161 invoices to Crown Clothing in Massachusetts for linings. Each invoice Rand sent to Crown Clothing contained essential terms such as quantity and price. [Graci Aff., ¶, 13]. Second, Rand contacted Crown Clothing in Massachusetts by telephone to negotiate changes in the unit price of the linings provided to Albena under the Sales Contracts. [Graci Aff., ¶ 15]. Rand's contacts with Massachusetts set forth above were instrumental to the formation of the Sales Contracts

between Crown Clothing and Rand because in the absence of these contacts the Sales Contracts would not have been formed. Accordingly, Crown Clothing has met its burden under the relatedness prong with respect to its contract claim against Rand.

    2.  Tort Claims

In determining the relatedness of a tort claim the courts focus on "whether the plaintiff has established 'cause in fact' (the injury would not have occurred 'but for' the defendant's forum-state activity) and 'legal cause' (the defendant's in-state conduct gave birth to the cause of action.)" Massachusetts School of Law, 142 F.3d at 35.

    a.  Randcore

Crown Clothing has asserted tort claims against Randcore for breach of fiduciary duty, conspiracy, conversion and unfair and deceptive trade practices claim under M.G.L. ch. 93A, §11. Crown Clothing's tort claims against Randcore arise out of Randcore's contacts with Massachusetts.

The First Circuit has held that "breach of fiduciary duty occurs where the fiduciary acts disloyally." Phillips Exeter, 196 F.3d at 291. In Massachusetts, agents owe a fiduciary duty to their principals. Gagnon v. Coombs, 39 Mass App. Ct. 144, 154 (1995). The duty is "the duty of utmost good faith and absolute loyalty." Id. Randcore was an agent for Crown Clothing under the Agreement and, therefore, Randcore was required to perform its duties under the Agreement with the duty of utmost good faith and absolute loyalty. [Graci Aff. ¶, 4]. Randcore breached its fiduciary duty when Andre Bernard made false statements to Crown Clothing in Massachusetts regarding Albena's inability to provide linings for the overcoats. [Graci Aff., ¶¶, 7 and 17]. In addition, Randcore breached its fiduciary duty when its principal Andre Bernard, through Rand,

sent invoices to Crown Clothing in Massachusetts for linings that were never purchased or incorporated into the overcoats. [Graci Aff., ¶¶, 7, 12 and 17].

The First Circuit has also held that "the tort of conversion is deemed to occur where the actual conversion takes place." United States v. Swiss American Bank, Ltd., 191 F.3d 30, 37 (1st Cir. 1999) (the court held that an action for the conversion of funds from an Antigua bank account occurred in Antigua.) Here, Andre Bernard sent fraudulent invoices to Crown Clothing in Massachusetts in order to convert Crown Clothing's funds for its own use. [Compl. ¶, 38]. Crown Clothing paid these invoices with wire transfers and checks drawn on Crown Clothing's bank located in Massachusetts. [Graci Aff. ¶, 13]. Therefore, because the conversion and the resulting injury occurred in Massachusetts, and because Crown Clothing's claim for conversion is a result of Randcore's intentional contacts with Massachusetts, Crown Clothing's conversion claim is directly related to Randcore's contacts with Massachusetts.

Randcore's Massachusetts contacts also directly relate to Crown Clothing's tort claims against Randcore for conspiracy and deceptive trade practices because by intentionally sending invoices to Crown Clothing in Massachusetts, Andre Bernard, wearing the hats of Randcore and Rand, pursued a common plan to defraud Crown Clothing. See Kurker v. Hill, 44 Mass. App. Ct. 184, 188 (1998) (the Court noted that the key to civil conspiracy is "the defendant's substantial assistance, with knowledge that such assistance is contributing to a common tortuous plan"). Accordingly, because Randcore's contacts with Massachusetts have a substantial nexus with the torts claim asserted against Randcore, Crown Clothing has met its burden under the relatedness prong with respect to its tort claims against Randcore.

b.  Rand

Crown Clothing has asserted tort claims against Rand for fraud, conspiracy, conversion and unfair and deceptive trade practices claim under M.G.L. ch. 93A, §11.  Crown Clothing's tort claims against Rand for conspiracy, conversion and unfair trade practices arise out of Rand's contacts with Massachusetts for the same reasons discussed above with regard to Randcore.  In addition, for the reasons discussed below, Rand's contacts with Massachusetts relate to Crown Clothing's fraud claim against Rand.

The First Circuit has held that "where a defendant knowingly sends into a state a false statement, intending that it should be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state."  Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972).  Here, Rand "knowingly" sent false statements into Massachusetts when it sent invoices to Crown Clothing for linings that were never provided to Albena.  [Graci Aff., ¶¶, 12 and 17].  Rand knew that Crown Clothing would rely on the invoices for the linings based on Andre Bernard's earlier statements to Crown Clothing that Rand would provide linings to Albena.  [Graci Aff., ¶¶, 7 and 13].  In the absence of Rand's statements in the invoices sent to Massachusetts regarding the quantity and price of the linings, Crown Clothing would not have paid for the linings and, therefore, would not have been injured.  Furthermore, Rand's statements in the invoices are the direct cause for Crown Clothing's fraud claim against Rand because Rand's act of sending invoices to Crown Clothing in Massachusetts gave rise to Crown Clothing's fraud claim.  See Levin v. Harned, 304 F.Supp. 2d 136, 150 (D. Mass 2003) (the plaintiff's claims were related to the defendants' Massachusetts contacts because the defendants transmitted fraudulent information to the plaintiff in Massachusetts and which the plaintiffs

relied on to purchase goods.)  Accordingly, Crown Clothing has met its burden under the relatedness prong with respect to its tort claims against Rand.

        b.      Andre Bernard

Crown Clothing has asserted tort claims against Andre Bernard for fraud, conspiracy, conversion and unfair and deceptive trade practices claim under M.G.L. ch. 93A, §11.  Crown Clothing's tort claims against Andre Bernard arise out of Bernard's contacts with Massachusetts discussed above in connection with Randcore and Rand.  Accordingly, for the same reasons discussed above, Crown Clothing has met its burden under the relatedness prong with respect to its tort claims against Andre Bernard.

    B.      Purposeful Availment

The purposeful availment prong requires consideration of whether the defendants' contacts with the forum represent a purposeful availment of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its law and making the defendant's involuntary presence in the state's courts foreseeable.  Phillips Exeter, 196 F.3d at 292.  "This prong is satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject the court's jurisdiction based on these contacts."  United States v. Swiss American Bank Ltd., 274 F.3d 610, 624 (1st Cir. 2001).  In addition, the defendants' contacts with the forum must be such that "he should reasonably anticipate being haled into court there."  Nowak, 94 F.3d at 717; citing World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980).  Here, the Defendants benefited from the voluntary contacts they had with Crown Clothing in Massachusetts so that it was reasonable for the Defendants to anticipate being haled into court in Massachusetts.

The First Circuit has held that "there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation, for such sender has thereby 'purposefully availed itself of the privilege of conducting activities within the forum state…'" Murphy, 460 F.2d at 664; citing Hanson v. Denckla, 37 U.S. 235, 253 (1958). The Supreme Court has also held that jurisdiction can be properly asserted over a defendant where the defendant aimed an act at the forum state, knew the act would likely have a devastating effect and knew the injury would be felt in the forum state. Calder, 465 U.S. at 789. Here, Andre Bernard intentionally sent invoices to Crown Clothing in Massachusetts for linings that were never provided to Albena. [Graci Aff. ¶, 12 and 17]. These acts were aimed directly at Crown Clothing in Massachusetts and the Defendants knew that injurious effects of these acts would be felt by Crown Clothing in Massachusetts because the invoices were sent directly to Crown Clothing in Massachusetts.

In addition to sending invoices to Massachusetts for the linings, Andre Bernard sent invoices to Crown Clothing in Massachusetts for commissions Randcore earned under the Agreement. [Graci Aff., ¶¶, 11 and 19]. Moreover, Rand and Randcore, through Andre Bernard or their representatives, initiated telephone calls and sent emails to Crown Clothing in connection with the Agreement and linings. [Graci Aff. ¶¶, 5-7 and 10]. Andre Bernard also sent samples of garments being manufactured by Albena to Crown Clothing in Massachusetts for purposes of quality control. [Graci Aff. ¶, 9]. Furthermore, Andre Bernard periodically met with Crown Clothing representatives in Massachusetts to discuss issues relating to the Agreement and the linings. [Graci Aff. ¶, 14].

When considering all of the voluntary contacts the Defendants had with Massachusetts it is reasonable to conclude that the Defendants could have reasonably foreseen being haled into a

Massachusetts to respond Crown Clothing's claims for tort and breach of contract. Accordingly, Crown Clothing has met its burden under the purposeful availment prong with respect to each of the Defendants.

    C.    <u>Reasonableness</u>

Personal jurisdiction may only be exercised "if it comports with traditional notions of fair play and substantial justice." <u>International Shoe</u>, 326 U.S. at 320). The First Circuit has examined this standard through the application of the "gestalt" factors. <u>Nowak</u>, 94 F.3d at 717. The "gestalt" factors are as follows:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interest of all sovereigns in promotion substantive social policies.

<u>Id</u>. at 717. "The "gestalt" factors are not ends themselves, but they are, collectively, a means of assisting the courts in achieving substantial justice." <u>Ticketmaster</u>, 26 F.3d at 210. Courts typically give consideration to these factors when there is a close question on the defendant's "minimum contacts" with the forum state. <u>Nowak</u>, 94 F.3d at 717 ("gestalt" factors are particularly relevant when the minimum contacts question is close). This is not the case here. The Defendants, through their contacts, purposely availed themselves of the privilege of doing business in Massachusetts, and there are strong contacts. In any event, the "gestalt" factors weigh in favor of Crown Clothing and in favor of vesting jurisdiction in Massachusetts.

    1.    <u>The Burden of Appearance</u>

There is no significant burden imposed on the Defendants' if this Court chooses to exercise jurisdiction, particularly since jurisdiction would be in the Defendants' neighboring state. The First Circuit has found that there is no unusual burden on defendants who reside, or

have a principal place of business in foreign countries.  See Nowak, 94 F.3d at 718 (gestalt factors weighed in the plaintiff's favor--nothing unusual about the Chinese corporate defendant's situation beyond the ordinary cost and inconvenience of defending an action in a foreign country).  The only burdens the Defendants have identified are the typical burdens incurred by all out-of-state defendants who have to defend in another jurisdiction, i.e., cost and time.  [Bernard Aff., ¶ 16].  This alleged burden is insufficient because it does not establish that the exercise of jurisdiction would be "onerous in a special, unusual, or other constitutionally significant way."  Id. citing, Pritzker, 42 F.3d at 64.  Accordingly, this factor weighs in favor of Crown Clothing.

      2.      Interest of the Forum

"The forum state has a demonstrable interest in exercising jurisdiction over one who causes tortuous injury within its borders."  Ticketmaster, 26 F.3d at 211.  Here, as discussed above, the Defendants have not only caused injury to Crown Clothing in Massachusetts, but their actions within the borders of Massachusetts gave rise to Crown Clothing's tort and contract claims.  Therefore, because Crown Clothing's claims and injury arose from the Defendant's actions in Massachusetts, this factor weighs in favor of Crown Clothing.

      3.      The Plaintiff's Convenience

As an initial matter, the court must give some deference to a plaintiff's choice of forum.  Nowak, 94 F.3d at 718.  Here, Crown Clothing will suffer significant inconvenience if this matter is dismissed for this forum.  If this matter were litigated in another forum Robert R. Graci ("Graci"), as key officer of Crown Clothing and a key witness in this litigation, would be required to participate in discovery and attend hearings in another forum.  [Graci Aff., ¶ 20].  This would have a severe impact on the day to day operations of Crown Clothing and its ability

to conduct its business because Graci is in charge of the day to day operations of Crown Clothing. [Graci Aff., ¶ 20]. Accordingly, for these reasons this factor weighs in favor of Crown Clothing.

Crown Clothing agrees with the Defendants that the fourth and fifth factors are not relevant to the facts and circumstances of this case and, therefore, do not favor either party.

In sum, the "gestalt" factors weigh strongly in favor of Crown Clothing or are neutral. Accordingly, Crown Clothing has met its burden under the reasonableness prong with respect to each of the Defendants.

## II.    THE DEFENDANTS' REQUEST FOR TRANSFER UNDER 28 U.S.C § 1631

If this Court were to find that it cannot exercise specific jurisdiction over the Defendants, Crown Clothing does not object to the Defendants' request to transfer this case to the U.S. District Court for the Southern District of New York.

## III.    CONCLUSION

The essence of Crown Clothing's Amended Complaint is that acts of Andre Bernard and Rand in mailing fraudulent invoices to Crown Clothing in Massachusetts, which induced Crown Clothing to pay almost $1,000,000 for linings that the Defendants never provided to Albena to be sewn into the overcoats, have caused substantial damage to Crown Clothing.

The exercise by this Court of specific jurisdiction over the Defendants in this case comports with the Due Process requirements of the Fourteenth Amendment. Crown Clothing has met its burden under each prong of the three step specific jurisdictional analysis test by showing that the Defendants' contacts with Massachusetts directly relate to the tort and contract claims Crown Clothing, that the Defendants made contacts with Massachusetts such that they

represented a purposeful availment of the privilege of conducting activities that made it foreseeable that they could be sued in Massachusetts, and that the exercise of jurisdiction by this Court is reasonable because it "comports with traditional notions of fair play and substantial justice" under the "gestalt" factors analysis. Because Crown Clothing has met its burden under each prong of the specific jurisdiction analysis for each of the Defendants, this Court is vested with the power to exercise specific personal jurisdiction over the Defendants. Accordingly, the Defendants Motion to Dismiss the Complaint must be denied.

      Respectfully submitted,

      CROWN CLOTHING CORPORATION,

      By its attorneys,

      /s/ Ryan M. MacDonald
      John C. Wyman (BBO #535620)
      Ryan MacDonald (BBO #654688)
      Murtha Cullina LLP
      99 High Street, 20th Floor
      Boston, MA 02110-2320
      (617) 457-4000

Dated: February 23, 2005

## REQUEST FOR ORAL ARGUMENT

Pursuant to LR 7.1(D), Crown Clothing requests oral argument.