UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                          :
CROWN CLOTHING CORPORATION,               :
                    Plaintiff             :        Civil Action No. 05-10049 (NG)
                                          :
            v.                            :
                                          :
RANDCORE, INC.,                           :
RAND INTERNATIONAL TRADING,               :
INC., ANDRE BERNARD, AND                  :
RONALD BERNARD,                           :
                    Defendants            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT
FOR LACK OF PERSONAL JURISDICTION

Defendants Randcore, Inc. ("Randcore"), Rand International Trading, Inc. ("Rand"), and Andre Bernard (collectively, "Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. By failing to submit an affidavit in opposition to Defendants' motion from Crown's President, Richard Silverman, Plaintiff demonstrates a preference to avoid facts that are both central to Defendants' arguments and damaging to Plaintiff's position. In the same manner, Plaintiff has chosen to ignore applicable law and to rely instead on cases that are either inapposite or distinguishable from the circumstances at issue here. Plaintiff's opposition papers contain tortured arguments which have no basis in law or fact. As such, they fail to effectively rebut the arguments raised by Defendants and only serve to bolster Defendants' application. Accordingly, Plaintiff's claims against the Defendants should be dismissed for lack of personal jurisdiction.

## ARGUMENT

### PLAINTIFF FAILS TO ESTABLISH THAT PERSONAL JURISDICTION MAY PROPERLY BE ASSERTED OVER THE DEFENDANTS

As a preliminary matter, Plaintiff erroneously contends that a court may exercise personal jurisdiction over a defendant with respect to the action as a whole if it determines that jurisdiction exists with respect to any single claim. (See Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss ("P. MOL"), dated February 23, 2005, at 5.) Contrary to Plaintiff's assertion, it is well established that "[q]uestions of specific jurisdiction are always tied to the particular claims asserted." Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999). Thus, each of Plaintiff's claims must satisfy the First Circuit's "tripartite analysis" to establish the existence of specific jurisdiction.[1] Phillips Exeter, 196 F.3d at 288-89; see also Remick v. Manfredy, 238 F.3d 248, 255 (3rd Cir. 2001) ("[A]

---

[1] Plaintiff does not argue that the Court may exercise general jurisdiction over any of the Defendants.

conclusion that the [d]istrict [c]ourt has personal jurisdiction over one of the defendants as to a particular claim . . . does not necessarily mean that it has personal jurisdiction over that same defendant as to . . . other claims."); Hainey v. World Am Communications, Inc., 263 F.Supp.2d 338, 344 (D.R.I. 2003) (rejecting as "impermissible" plaintiffs' request that the court "merge" one claim with the other claims to determine personal jurisdiction); Sears, Roebuck & Co. v. Sears, 744 F.Supp. 1297, 1307 (D.Del. 1990) ("Absent general jurisdiction over a defendant, each claim brought by a plaintiff must be supported by independent acts of the defendant that establish sufficient minimum contacts among the defendant, the forum and that claim."). Plaintiff fails to satisfy its burden of showing that jurisdiction may properly be asserted over the Defendants with respect to each of Plaintiff's claims.

I.      Relatedness

     A.      Contract Claims

       As set forth in Defendants' initial memorandum of law, when assessing whether a plaintiff has met the relatedness inquiry as it applies to a contract claim, the court must ascertain whether the defendant's contacts with the forum were "instrumental either in the formation of the contract or in its breach." Phillips Exeter, 196 F.3d at 289; Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998).

      1.      Randcore

       Plaintiff contends that its contract claim against Randcore is based on Randcore's alleged breach of the covenant of good faith and fair dealing implied in the "Agency Agreement" annexed as Exhibit "A" to the amended complaint. (P. MOL at 6.) Plaintiff argues that the Agency Agreement "was formed [in 1995] through telephone, fax and mail communications between Andre Bernard in New York and Crown Clothing in Massachusetts." (P. MOL at 7 (citing Graci Aff. ¶ 5).) It further alleges that the Agency Agreement was breached when Andre Bernard "made false statements to Crown Clothing in Massachusetts regarding Albena's inability to provide linings," and when he "sent invoices to Crown Clothing in Massachusetts for linings that were never provided to Albena." (P. MOL at 7 (citing Graci Aff. ¶¶ 12, 17).)

Plaintiff fails to proffer any evidence to substantiate its assertions.  Although copies of telephone bills and e-mail correspondence are annexed to Robert Graci's affidavit, none of the voluminous records submitted in opposition to Defendants' motion relate to any communications between the parties prior to May 2001.  Moreover, the invoices annexed to Mr. Graci's affidavit do not reflect charges for linings.

Defendants' moving papers establish that the Agency Agreement was back-dated by two years, covered a purported term that had already expired when it was signed by Mr. Bernard, and was drafted by Crown solely to avoid and circumvent United States Customs' officials and tariffs.  (See Affidavit of Andre Bernard ("Bernard Aff."), sworn to on January 24, 2005, submitted in support of Defendants' motion, ¶ 9.)  Significantly, Plaintiff fails to refute any of these facts, impliedly conceding that the Agreement is a nullity.[2]

---

[2]     Plaintiff urges this Court to apply the prima facie standard of review, (see P. MOL at 3-4), pursuant to which a district court "'consider[s] only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'"  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (2d Cir. 1995) (citing Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)); see also Boit, 967 F.2d at 675 ("To defeat a motion to dismiss when the court uses [the prima facie standard] the plaintiff must make the showing as to *every fact* required to satisfy [due process requirements].") (emphasis added).  In determining whether a prima facie showing has been made, a court must accept as true only "properly supported" proffers of evidence.  Boit, 967 F.2d at 675; see also Foster-Miller, 46 F.3d at 145 ("[T]he court, in a manner reminiscent of its role when a motion for summary judgment is on the table . . . , must accept the plaintiff's *(properly documented)* evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.") (emphasis added).  "[T]he law does not require [a court] to 'credit conclusory allegations or draw farfetched inferences.'"  Massachusetts Sch. of Law, 142 F.3d at 34 (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).  Accordingly, this Court need not accept Plaintiff's unsubstantiated allegations regarding the Agency Agreement, particularly in light of its failure to refute Defendants' evidence concerning its formation.

Without a contract, there can be no implied covenant of good faith and fair dealing and thus no breach of such covenant.  As the First Circuit explained in a recent decision,

> Under Massachusetts law, [t]he covenant of good faith and fair dealing . . . may not . . . create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance. . . .  In other words, the implied covenant of good faith and fair dealing governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached.

Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 399 F.3d 360, 371-72 (1st Cir. 2005) (citation and quotation marks omitted) (alteration in original).

Thus, Plaintiff fails to state a contract claim against Randcore.  "A court cannot base its exercise of jurisdiction on claims which are not viable."  Callahan v. Harvest Bd. Int'l, Inc., 138 F.Supp.2d 147, 165 (D.Mass. 2001).  Accordingly, this Court lacks jurisdiction over Randcore.

2.    Rand

Plaintiff's contract claim against Rand is based on Rand's alleged failure to deliver linings to Albena in Bulgaria.  (P. MOL at 8 (citing Am. Cplt. ¶ 32).)  Straining to justify jurisdiction over Rand, Plaintiff argues that Rand's mailing of invoices and calling Crown in Massachusetts "to negotiate changes in the unit price of the linings provided to Albena" were contacts "instrumental to the formation" of Rand's contract with Plaintiff.  (P. MOL at 8.)

Logic dictates that the mailing of invoices occurred only *after* the formation of Rand's contract with Crown.  Similarly, to the extent any changes to the contract were discussed, such communications must have also occurred *after* the formation of the contract.  Any argument to the contrary is simply nonsensical and confusing.

Moreover, Plaintiff does not address the issue of whether Rand's contacts with Massachusetts were instrumental to Rand's alleged breach of the contract. Accordingly, Plaintiff fails to establish any basis for this Court's exercise of jurisdiction over Rand with respect to its breach of contract claim.

B.    Tort Claims

As Defendants discussed in their moving papers, in a tort case, the focus of the relatedness inquiry is on whether the defendant's contacts with the forum caused the injury or gave rise to the plaintiff's legal claim. United States v. Swiss American Bank, Ltd., 274 F.3d 610, 622 (1st Cir. 2001); see also Phillips Exeter, 196 F.3d at 289 (in a tort case, the court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action"); Massachusetts Sch. of Law, 142 F.3d at 35 (if the plaintiff asserts a tort claim, the court "customarily look[s] to whether the plaintiff has established 'cause in fact (i.e., the injury would not have occurred "but for" the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)'") (citing United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)). The relevant contact is that which occurs within the forum state. The in-forum effects of conduct *outside* the forum are insufficient to meet the relatedness requirement. Swiss American Bank, 274 F.3d at 625; Phillips Exeter, 196 F.3d at 291; Massachusetts Sch. of Law, 142 F.3d at 36.

As it did in connection with its contract claims, Plaintiff attempts to satisfy the relatedness test as applied to its tort claims on the basis of: i) Andre Bernard's allegedly false statements, communicated by telephone to Crown in Massachusetts, regarding Albena's inability to provide linings; and ii) Rand's mailing of invoices "regarding the quantity and price of the linings" to Crown in Massachusetts.[3] (See P. MOL at 9-11.) Each of these contacts was purportedly initiated by one or more of the Defendants in New York, not Massachusetts.

_____

[3]    As discussed above, the records annexed to Mr. Graci's affidavit do not relate to any communications between the parties prior to May 2001, and the annexed invoices do not reflect charges for linings. The Court need not credit Plaintiff's unsupported allegations. See supra note 2.

Because Plaintiff cannot point to any in-forum activities by Defendants that relate to its tort claims, it invokes what is tantamount to the "effects test" adopted by the Supreme Court in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984).

In Calder, a reporter and editor for the *National Enquirer* wrote an allegedly libelous article about the entertainer Shirley Jones, who brought suit in California.  Calder, 465 U.S. at 784, 104 S.Ct. at 1484.  The reporter did most of his research in Florida, relying on telephone calls to sources in California for the information contained in the article.  Id. at 785, 104 S.Ct. at 1485.  Significantly, Calder "did not turn on the presence of physical, mail, or telephone contacts between the defendants and the forum."  Swiss American Bank, 274 F.3d at 623 (citing Calder, 465 U.S. at 787 n.6, 104 S.Ct. at 1485 n.6).  Rather, the Supreme Court held that it was proper for a court in California to exercise jurisdiction over the newspapermen "based on the 'effects' of their Florida conduct . . . ," which was "calculated to cause injury to [Ms. Jones] in California."  Calder, 465 U.S. at 789, 791, 104 S.Ct. at 1486-87, 1488.

Similarly, here, Plaintiff argues that it has met its burden of establishing relatedness based on the alleged injury to Plaintiff in the Commonwealth.  (See P. MOL at 11.)  Plaintiff's argument fails for the reasons enumerated by the First Circuit in Swiss American Bank.  There the court emphasized that "Calder's 'effects' test was adopted 'for determining *purposeful availment* in the context of defamation cases."  Id. at 623 (citing Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998)).  The court explained that in Calder, "[b]oth the in-forum publication and the in-forum injury were clearly related to the plaintiff's defamation suit, so the Supreme Court did not need to address the relatedness prong before proceeding to the purposeful availment inquiry."  Id. at 624.  The First Circuit held that the effects test "is a gauge for purposeful availment and is to be applied *only after the relatedness prong has already been satisfied*."  Id. (emphasis added); see also Levin v. Harned, 304 F.Supp.2d 136, 151 (D.Mass. 2003) (recognizing that court is "constrained by Swiss Am[erican] Bank from even considering the effects of the tortious conduct until after the relatedness prong has been established . . .").

The court in <u>Swiss American Bank</u> further emphasized that because the effects test "was specifically designed for use in a defamation case," it is unclear whether <u>Calder</u> applies to other torts.  <u>Swiss American Bank</u>, 274 F.3d at 624.  It also distinguished <u>Calder</u> as a case in which the actual tort, not just its consequences, occurred within the forum.  <u>Id.</u> (comparing <u>Calder</u> to other cases, including <u>Swiss American Bank</u>, 191 F.3d at 37, in which tortious conversion or breach of contract occurred outside of the forum).  Finally, the court reaffirmed the principle that the in-forum effects of extra-forum activities do not suffice to constitute minimum contacts for the purpose of the relatedness inquiry.  <u>Id.</u> (citing, among other cases, <u>Massachusetts Sch. of Law</u>, 142 F.3d at 36).

As Defendants previously argued, their contacts with Massachusetts did not cause Plaintiff's alleged injury or give rise to its tort claims.  Rather, Plaintiff's alleged injury arose from Defendants' purported conduct in New York, where they allegedly misrepresented that Albena could not supply linings for the overcoats that it was to manufacture for Crown,[4] and where Defendants allegedly converted Crown's money for their own use.[5]  (<u>See</u> Bernard Aff. ¶¶ 6-7.)  Thus, unlike <u>Calder</u>, the actual torts alleged by Plaintiff, as distinguished from the consequences of such torts, did not occur in the forum.  Accordingly, Plaintiff's attempt to use

---

[4]    "A breach of fiduciary duty occurs where the fiduciary acts disloyally."  <u>Phillips Exeter</u>, 196 F.3d at 291.

[5]    "The legal injury occasioned by the tort of conversion is deemed to occur where the actual conversion takes place."  <u>United States v. Swiss American Bank, Ltd.</u>, 191 F.3d 30, 37 (1ˢᵗ Cir. 1999).  "[L]iability for conversion arises when one . . . intentionally and wrongfully exercises acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . ."  <u>General Electric Co. v. Halmar Distribs., Inc.</u>, 968 F.2d 121, 129 (1ˢᵗ Cir. 1992) (internal quotation marks and citations omitted); <u>see also</u> <u>Massachusetts Eye and Ear Infirmary</u>, 399 F.3d at 372 ("'Conversion requires the exercise of dominion or control over the personal property of another.'") (citation omitted).  There is no dispute that Defendants received Plaintiff's payments in New York, where Defendants reside and conduct their business.  Thus, any alleged conversion would have taken place in New York, not Massachusetts.

the effects test to meet the relatedness prong of the jurisdictional test is futile.[6]

## II.    Purposeful Availment

Perhaps most ineffectual among Plaintiff's responses to Defendants' arguments is its treatment of the purposeful availment test.  In conclusory fashion, Plaintiff states initially that "the Defendants benefited from the voluntary contacts they had with Crown Clothing in Massachusetts so that it was reasonable for the Defendants to anticipate being haled into court in Massachusetts."  (P. MOL at 12.)  Whether one party benefits from its contacts with another – a likely occurrence in a contractual relationship –  has no bearing on whether the party purposefully availed itself of the privilege of conducting activities in the forum state.

Rather, as set forth in Defendants' initial memorandum of law, the purposeful availment test requires consideration of whether the defendant's contacts with the forum "'represent a purposeful availment of the privilege of conducting activities in [the forum], thereby invoking the benefits and protections of [its] laws and making the defendant[s'] involuntary presence before the state's courts foreseeable.'"  Phillips Exeter, 196 F.3d at 292 (quoting United Elec., Radio and Mach. Workers, 960 F.2d at 1089) (second and third alterations in original).  "The function of the purposeful availment requirement is to assure that jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous contacts' with the forum states."  Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995) (citation omitted). "Without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship – say, by solicitation [citing Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 716-17 (1st Cir. 1996)] – the mere fact that the defendant willingly entered into a tendered

---

[6]    Plaintiff's reliance on Murphy v. Erwin-Wasey, Inc., 460 F.2d 661 (1st Cir. 1972), and Levin v. Harned, 304 F.Supp.2d 136 (D.Mass. 2003), is misplaced.  Murphy, which primarily interpreted Section 3(c) of the Massachusetts long-arm statute rather than the Fourteenth Amendment's Due Process Clause, was decided well before the First Circuit's decision in Swiss American Bank and the Supreme Court's decision in Calder.  In Levin, the district court acknowledged that the case "presents difficult questions under the 'relatedness' step of the due process analysis," but determined that, as in Calder, the actual tort, not just the consequences, occurred within the forum.  Levin, 304 F.Supp.2d at 150.  For the reasons discussed above, the same cannot be said here.

relationship does not carry the day." Phillips Exeter, 196 F.3d at 292; see also Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 933 (1st Cir. 1985) ("[T]he fact that a nonresident enters into a single commercial contract with a resident of the forum state is not necessarily sufficient to meet the constitutional minimum for jurisdiction.").

Plaintiff fails to establish that Defendants reached out to Crown in Massachusetts to initiate any agreement. See Phillips Exeter, 196 F.3d at 292. Not only do the proffered telephone records not relate to any communications between the parties prior to May 2001; they do not reflect the initiation or solicitation of any contractual relationship by Defendants.[7]

Moreover, there is no dispute that contract performance took place outside of Massachusetts. Randcore located Albena in Bulgaria, where it supervised the production of the coats manufactured for Crown. (Bernard Aff. ¶¶ 4-5, 14.) Rand was to purchase the linings in Bulgaria and deliver them to Albena there. (Bernard Aff. ¶ 6.) Plaintiff does not contest any of these facts.[8] Insofar as Mr. Bernard traveled to Boston on a handful of occasions over the past decade, those trips were made for a limited purpose and were merely incidental to Randcore's performance of its contractual duties. (Bernard Aff. ¶ 14; Bernard Reply Aff. ¶ 13.)

In their prior memorandum of law, Defendants discussed at great length the similarities between this case and Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111 (1st Cir. 1997). (See Defendants' memorandum of law submitted in support of their motion to dismiss ("D. MOL"), dated January 24, 2005, at 12-14.) Plaintiff offers no response. Instead, it focuses again on the invoices sent to Crown in Massachusetts and Defendants' telephone and e-mail communications with Plaintiff. (See P. MOL at 13.)

---

[7]    In this regard, it is worth emphasizing that the burden of proving every fact required to satisfy the jurisdictional test rests on Plaintiff. Swiss American Bank, 274 F.3d at 618; Boit, 967 F.2d at 675.

[8]    While Mr. Graci alleges that Mr. Bernard sent samples of garments manufactured by Albena to Crown in Massachusetts, Graci Aff. ¶ 9), Plaintiff omitted from its papers bills of lading which would confirm that Albena sent samples of merchandise directly to Crown. Neither Rand, Randcore nor Mr. Bernard were ever authorized to send garments to Crown, nor did they have the personnel to ship sample merchandise. (See Reply Affidavit of Andre Bernard ("Bernard Reply Aff."), sworn to on March 17, 2005, submitted in further support of Defendants' motion, at ¶ 10.)

In <u>Lyle</u>, the First Circuit affirmed the district court's dismissal of the action for lack of personal jurisdiction notwithstanding the defendant's regular communication with Lyle in Massachusetts. <u>Lyle</u>, 132 F.3d at 112. It concluded that the defendant's contacts with Massachusetts were "purely incidental" and therefore insufficient to satisfy jurisdictional requirements. <u>Id.</u> at 113. Similarly, here, Defendants' contacts with Massachusetts were merely attendant to their business with Crown. "The very exiguousness of these contacts suggests that [Defendants] could not reasonably have foreseen [their] susceptibility to suit" in a Massachusetts court. <u>Phillips Exeter</u>, 196 F.3d at 292; <u>see also</u> <u>CVS Corp. v. Taubman Ctrs., Inc.</u>, 225 F.Supp.2d 120, 126 (D.R.I. 2002) (Michigan-based leasing agent was not subject to personal jurisdiction in Rhode Island even though it had ongoing correspondence with and sent invoices to plaintiff in Rhode Island, where agent did not reach out to plaintiff in Rhode Island to solicit business and its correspondence with plaintiff was "simply a necessary means of performing" under its contracts). Accordingly, Plaintiff fails to show that Defendants purposefully availed themselves of the privilege of conducting activities in Massachusetts.

III.    <u>Reasonableness</u>

In light of Plaintiff's failure to meet its burden with respect to the relatedness and purposeful availment prongs of the jurisdictional test, the Court need not proceed to the reasonableness element of the inquiry. <u>See, e.g.</u>, <u>Phillips Exeter</u>, 196 F.3d at 292 (declining to assess whether asserting jurisdiction would be reasonable after determining that plaintiff failed to make a prima facie showing of relatedness and purposeful availment). In any event, for the reasons discussed in Defendants' previous submissions, an analysis of the "gestalt" factors leads to the conclusion that the exercise of personal jurisdiction over the Defendants in this Massachusetts court would be unreasonable. (<u>See</u> D. MOL at 15-18.)

<u>CONCLUSION</u>

For all of the foregoing reasons, this Court's exercise of personal jurisdiction over the Defendants would offend the principles of due process.  Accordingly, the Court should dismiss the claims against Defendants for lack of personal jurisdiction, and grant such other and further relief as the Court deems just and proper.

Dated:  March 25, 2005

Respectfully submitted,

Defendants Randcore, Inc., Rand
International Trading, Inc., Andre Bernard, and
Ronald Bernard

By their Attorneys,

SUGARMAN, ROGERS, BARSHAK
   & COHEN, P.C.


By:     /s/ Jeffrey S. Stern
                   Jeffrey S. Stern
           101 Merrimac Street
           Boston, Massachusetts 02114
           (617) 227-3030
           BBO No. 479460

<u>CERTIFICATE OF SERVICE</u>

I, Jeffrey S. Stern, hereby certify that on the 25th day of March, 2005, I caused the within reply memorandum of law to be served by mailing a copy thereof, postage prepaid, to the following counsel of record:

John C. Wyman, Esq.
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, Massachusetts 02110

Gary R. Greenberg, Esq.
Greenberg Traurig
One International Place
Boston, Massachusetts 02110


/s/ Jeffrey S. Stern
        Jeffrey S. Stern

13

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

            :

CROWN CLOTHING CORPORATION,        Civil Action No. 05-10049 (NG)

            :

        Plaintiff

            :

        v.          :     REPLY AFFIDAVIT OF
                  ANDRE BERNARD IN

RANDCORE, INC.,            SUPPORT OF MOTION TO
RAND INTERNATIONAL TRADING,   :   DISMISS THE COMPLAINT
INC., ANDRE BERNARD, AND
RONALD BERNARD,         :
        Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK    )
                 ) ss:
COUNTY OF NEW YORK  )

ANDRE BERNARD, being duly sworn, deposes and says:

1.    I am an individual defendant and also serve as the president of Randcore,

Inc. ("Randcore") and Rand International Trading, Inc. ("Rand"), the corporate defendants in this

action. I submit this reply affidavit in further support of Randcore, Rand and my application to

dismiss the amended complaint for lack of personal jurisdiction. As demonstrated in greater

detail below, nothing contained in Crown Clothing Corporation's ("Crown") opposition papers

establishes that Defendants are subject to the jurisdiction of the Commonwealth.

2.    Crown's opposition papers, comprised of Robert Graci's affidavit and a

memorandum of law, are noteworthy in several respects. By itself, the fact that Mr. Graci

submitted an affidavit, rather than Crown's President Richard Silverman, reveals Crown's

unwillingness to confront key issues in connection with the motion to dismiss and the litigation

as a whole.

3.    Richard Silverman was the individual with whom Defendants had primary contact. It was Richard Silverman, not Robert Graci, who initially approached Randcore in New York in late 1996 or 1997 to request that it locate an overseas factory that could manufacture Crown's overcoats. And, it was Richard Silverman, not Robert Graci, who participated in virtually all business negotiations with the Defendants regarding the manufacture of Crown's overcoats, since Mr. Silverman resides in Manhattan and participated in meetings and/or drafted documents in New York City, where Crown also maintains its only showroom.

4.    For several years during the 1990s, I met with Mr. Silverman, not Mr. Graci, approximately every two weeks at Randcore's New York office and at Crown's New York showroom, for the purpose of discussing issues relating to the garments that were manufactured in Europe. To this day, Mr. Silverman and I continue to speak and meet to discuss issues that arise with respect to Crown's arrangement with Albena Style AD ("Albena") and other overseas manufacturers. Mr. Graci is not a party to these meetings or conversations.

5.    In reality, Mr. Silverman refused to submit an affidavit because he was unwilling to discuss the "Agency Agreement" annexed as Exhibit "A" to the amended complaint. In or around 1997, Mr. Silverman insisted that I sign the Agency Agreement even though it was back-dated by two years. He claimed that he needed that document for Crown's protection in the event that Crown was audited by United States Customs' officials. Mr. Silverman promised that he would not hold Randcore to the express terms of the Agreement and that it was drafted solely to avoid having to pay various tariffs and penalties that could be imposed against Crown. I signed the Agreement on Randcore's behalf in reliance on Mr. Silverman's representation that he

would not seek to enforce the Agreement at a later date. Although I signed the Agreement in 1997, the purported term of the Agreement was from March 1, 1995 to December 31, 1996. Consequently, the Agreement expired prior to the parties' performance thereunder.

6.    With the absence of an affidavit from Mr. Silverman, Crown has not refuted the fact that the Agency Agreement on which it relies is an instrument that was drafted by Crown to avoid and circumvent United States Customs' officials and tariffs, a fact that Mr. Silverman has recently admitted. So, too, Mr. Silverman's silence on the fact that the parties' business dealings were almost entirely conducted in New York, as opposed to Massachusetts, is deafening.

7.    While Mr. Silverman says nothing about Defendants' contacts with the Commonwealth, Mr. Graci purposely overstates the nature and frequency of my contacts with Massachusetts. He claims to have negotiated the Agency Agreement by telephone and fax while he was in Massachusetts and I was in New York, but fails to annex a single fax which substantiates his claim. (Graci Aff. ¶ 5.) In truth, the Agency Agreement was presented to me by Mr. Silverman at Randcore's offices in New York. I did not negotiate any of the terms with Mr. Silverman, and certainly not with Mr. Graci, since the Agency Agreement was signed after it expired at the behest of Mr. Silverman.

8.    Mr. Graci also alleges that in 1997, I called him in Massachusetts to discuss the terms of the proposed contract with Albena. (Graci Aff. ¶¶ 6-7.) This is also untrue. That year, Messrs. Silverman and Graci accompanied me to Bulgaria, where Albena's factory was located. While there, they inspected sample merchandise and subsequently placed orders with Albena for apparel. It was during our stay in Bulgaria and when we returned to New York

3

from that trip, that Mr. Silverman and I, not Mr. Graci, negotiated the amount that Rand and

Randcore would be paid for its services.

9.     Mr. Graci offers several reasons to suggest that defendants are subject to

the jurisdiction of this Court. Each reason fails.

10.     First, Mr. Graci argues that I sent samples of garments manufactured by

Albena to Crown in Massachusetts. (Graci Aff. ¶ 9.)   However, the bills of lading which Crown

omitted from its motion papers confirm that Albena sent samples of merchandise directly to

Crown.   Neither Rand, Randcore nor I were ever authorized to send garments to Crown nor did

we have the personnel to ship sample merchandise.

11.     Next, Mr. Graci argues that Defendants called and sent e-mails to Crown

in Massachusetts. (Graci Aff. ¶ 10.) The telephone records and copies of the e-mails that are

annexed to Mr. Graci's affidavit as Exhibits "A" through "C" demonstrate that many of the calls

lasted less than one minute.  Usually, I called Crown in response to a telephone call that I was

returning to Mr. Silverman.  The e-mails are no different.  Many are comprised of a single

sentence and were sent in response to e-mails which had been sent by Crown.

12.     Mr. Graci also suggests that invoices which were forwarded to Crown,

annexed to his affidavit as Exhibits "D" and "E," somehow establish personal jurisdiction. (Graci

Aff. ¶¶ 11-12.)  Contrary to the allegations in his affidavit, the invoices clearly indicate that they

were sent by Rand and Randcore, not me.  In addition, while Mr. Graci states that "each invoice

sent to Crown stated the quantity of linings and provided the unit price for each lining," those

words do not appear on Exhibits "D" and "E."  (Graci Aff. ¶ 13.)

13.     In my original affidavit in support of the motion to dismiss, I pointed out

4

that, with few exceptions, all of my business meetings with Crown occurred in Randcore's

Manhattan offices, Crown's New York showroom, or in Bulgaria. In his affidavit, Mr. Graci

states that I traveled to Boston once in 2002 and 2003 and twice in 2004. (Graci Aff. ¶ 14.) One

of those visits, in July 2004, was for a luncheon at Mr. Graci's home where, at his behest, I drove

a fabric supplier, Andrea Barontini, who flew from Italy to New York. In short, I rarely traveled

to Massachusetts to meet with Crown, and Mr. Graci's affidavit confirms that critical fact.

14.    Finally, Mr. Graci alleges that litigating in New York will place an unfair

burden on Crown because Crown conducts "almost all its business in Massachusetts" and he

"will be forced, as [a] key officer in the corporation and a key witness in the litigation, to

participate in discovery and attend hearings and proceedings in New York." (Graci Aff. ¶ 20.)

This statement is a gross distortion of the facts and demonstrates the thin reed upon which

Crown's opposition is based. Crown maintains a showroom in Manhattan and a warehouse

facility immediately outside of Manhattan in Bayonne, New Jersey, and Richard Silverman

maintains a personal residence in Manhattan. Crown's presence in New York is not

happenstance; rather as a clothing manufacturer, it has its showroom in New York's garment

center so that it can conduct business in Manhattan. The same cannot be said of the Defendants,

who do not conduct any business in the Commonwealth, outside of a handful of visits to Crown.

15.    Contrary to his assertions, Mr. Graci is regularly in the New York

metropolitan area. Over the last six years, Mr. Graci has appeared in the metropolitan area at

least 25 times per year to conduct business for Crown and inspect merchandise that is shipped

from Europe.

16.    In addition, Mr. Graci's assertion that Crown conducts almost all its business in Massachusetts is belied by the telephone records he annexed to his affidavit. A cursory review of those documents confirms that Crown receives telephone calls from clients and customers throughout the country, not only from the Commonwealth. Clearly, Crown transacts business outside of Massachusetts and litigating its claims will not pose any practical burden. The same cannot be said of the defendants who do not conduct business in the Commonwealth and will be severely prejudiced if forced to litigate in Massachusetts.

_____
ANDRE BERNARD

Sworn to before me
on March 17, 2005

_____
Notary Public

**KENNETH A. KANFER**
**Notary Public, State of New York**
**No. 4947649**
**Qualified in New York County**
**Commission Expires February 27, 03-06-07**

M:\CLIENT\7288\01\7288w1aff.2.wpd

6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                          :
CROWN CLOTHING CORPORATION,               :
                     Plaintiff            :          Civil Action No. 05-10049 (NG)
                                          :
         v.                               :
                                          :
RANDCORE, INC.,                           :
RAND INTERNATIONAL TRADING,               :
INC., ANDRE BERNARD, AND                  :
RONALD BERNARD,                           :
                     Defendants           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT
<u>FOR LACK OF PERSONAL JURISDICTION</u>

Defendants Randcore, Inc. ("Randcore"), Rand International Trading, Inc. ("Rand"), and Andre Bernard (collectively, "Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  By failing to submit an affidavit in opposition to Defendants' motion from Crown's President, Richard Silverman, Plaintiff demonstrates a preference to avoid facts that are both central to Defendants' arguments and damaging to Plaintiff's position.  In the same manner, Plaintiff has chosen to ignore applicable law and to rely instead on cases that are either inapposite or distinguishable from the circumstances at issue here.  Plaintiff's opposition papers contain tortured arguments which have no basis in law or fact.  As such, they fail to effectively rebut the arguments raised by Defendants and only serve to bolster Defendants' application.  Accordingly, Plaintiff's claims against the Defendants should be dismissed for lack of personal jurisdiction.

<u>ARGUMENT</u>

PLAINTIFF FAILS TO ESTABLISH THAT
PERSONAL JURISDICTION MAY PROPERLY
<u>BE ASSERTED OVER THE DEFENDANTS</u>

As a preliminary matter, Plaintiff erroneously contends that a court may exercise personal jurisdiction over a defendant with respect to the action as a whole if it determines that jurisdiction exists with respect to any single claim.  (<u>See</u> Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss ("P. MOL"), dated February 23, 2005, at 5.)  Contrary to Plaintiff's assertion, it is well established that "[q]uestions of specific jurisdiction are always tied to the particular claims asserted."  <u>Phillips Exeter Academy v. Howard Phillips Fund, Inc.</u>, 196 F.3d 284, 289 (1st Cir. 1999).  Thus, each of Plaintiff's claims must satisfy the First Circuit's "tripartite analysis" to establish the existence of specific jurisdiction.[1]  <u>Phillips Exeter</u>, 196 F.3d at 288-89; <u>see also</u> <u>Remick v. Manfredy</u>, 238 F.3d 248, 255 (3rd Cir. 2001) ("[A]

---

[1]    Plaintiff does not argue that the Court may exercise general jurisdiction over any of the Defendants.

conclusion that the [d]istrict [c]ourt has personal jurisdiction over one of the defendants as to a particular claim . . . does not necessarily mean that it has personal jurisdiction over that same defendant as to . . . other claims."); Hainey v. World Am Communications, Inc., 263 F.Supp.2d 338, 344 (D.R.I. 2003) (rejecting as "impermissible" plaintiffs' request that the court "merge" one claim with the other claims to determine personal jurisdiction); Sears, Roebuck & Co. v. Sears, 744 F.Supp. 1297, 1307 (D.Del. 1990) ("Absent general jurisdiction over a defendant, each claim brought by a plaintiff must be supported by independent acts of the defendant that establish sufficient minimum contacts among the defendant, the forum and that claim."). Plaintiff fails to satisfy its burden of showing that jurisdiction may properly be asserted over the Defendants with respect to each of Plaintiff's claims.

I.    Relatedness

    A.    Contract Claims

    As set forth in Defendants' initial memorandum of law, when assessing whether a plaintiff has met the relatedness inquiry as it applies to a contract claim, the court must ascertain whether the defendant's contacts with the forum were "instrumental either in the formation of the contract or in its breach." Phillips Exeter, 196 F.3d at 289; Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998).

        1.    Randcore

    Plaintiff contends that its contract claim against Randcore is based on Randcore's alleged breach of the covenant of good faith and fair dealing implied in the "Agency Agreement" annexed as Exhibit "A" to the amended complaint. (P. MOL at 6.) Plaintiff argues that the Agency Agreement "was formed [in 1995] through telephone, fax and mail communications between Andre Bernard in New York and Crown Clothing in Massachusetts." (P. MOL at 7 (citing Graci Aff. ¶ 5).) It further alleges that the Agency Agreement was breached when Andre Bernard "made false statements to Crown Clothing in Massachusetts regarding Albena's inability to provide linings," and when he "sent invoices to Crown Clothing in Massachusetts for linings that were never provided to Albena." (P. MOL at 7 (citing Graci Aff. ¶¶ 12, 17).)

Plaintiff fails to proffer any evidence to substantiate its assertions.  Although copies of telephone bills and e-mail correspondence are annexed to Robert Graci's affidavit, none of the voluminous records submitted in opposition to Defendants' motion relate to any communications between the parties prior to May 2001.  Moreover, the invoices annexed to Mr. Graci's affidavit do not reflect charges for linings.

Defendants' moving papers establish that the Agency Agreement was back-dated by two years, covered a purported term that had already expired when it was signed by Mr. Bernard, and was drafted by Crown solely to avoid and circumvent United States Customs' officials and tariffs.  (See Affidavit of Andre Bernard ("Bernard Aff."), sworn to on January 24, 2005, submitted in support of Defendants' motion, ¶ 9.)  Significantly, Plaintiff fails to refute any of these facts, impliedly conceding that the Agreement is a nullity. [2]

---

[2]    Plaintiff urges this Court to apply the prima facie standard of review, (see P. MOL at 3-4), pursuant to which a district court "'consider[s] only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'"  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (2d Cir. 1995) (citing Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)); see also Boit, 967 F.2d at 675 ("To defeat a motion to dismiss when the court uses [the prima facie standard] the plaintiff must make the showing as to *every fact* required to satisfy [due process requirements].") (emphasis added).  In determining whether a prima facie showing has been made, a court must accept as true only "properly supported" proffers of evidence.  Boit, 967 F.2d at 675; see also Foster-Miller, 46 F.3d at 145 ("[T]he court, in a manner reminiscent of its role when a motion for summary judgment is on the table . . . , must accept the plaintiff's *(properly documented)* evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.") (emphasis added).  "[T]he law does not require [a court] to 'credit conclusory allegations or draw farfetched inferences.'"  Massachusetts Sch. of Law, 142 F.3d at 34 (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).  Accordingly, this Court need not accept Plaintiff's unsubstantiated allegations regarding the Agency Agreement, particularly in light of its failure to refute Defendants' evidence concerning its formation.

Without a contract, there can be no implied covenant of good faith and fair dealing and thus no breach of such covenant. As the First Circuit explained in a recent decision,

> Under Massachusetts law, [t]he covenant of good faith and fair dealing . . . may not . . . create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance. . . . In other words, the implied covenant of good faith and fair dealing governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached.

Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 399 F.3d 360, 371-72 (1st Cir. 2005) (citation and quotation marks omitted) (alteration in original).

Thus, Plaintiff fails to state a contract claim against Randcore. "A court cannot base its exercise of jurisdiction on claims which are not viable." Callahan v. Harvest Bd. Int'l, Inc., 138 F.Supp.2d 147, 165 (D.Mass. 2001). Accordingly, this Court lacks jurisdiction over Randcore.

2.    Rand

Plaintiff's contract claim against Rand is based on Rand's alleged failure to deliver linings to Albena in Bulgaria. (P. MOL at 8 (citing Am. Cplt. ¶ 32).) Straining to justify jurisdiction over Rand, Plaintiff argues that Rand's mailing of invoices and calling Crown in Massachusetts "to negotiate changes in the unit price of the linings provided to Albena" were contacts "instrumental to the formation" of Rand's contract with Plaintiff. (P. MOL at 8.)

Logic dictates that the mailing of invoices occurred only *after* the formation of Rand's contract with Crown. Similarly, to the extent any changes to the contract were discussed, such communications must have also occurred *after* the formation of the contract. Any argument to the contrary is simply nonsensical and confusing.

Moreover, Plaintiff does not address the issue of whether Rand's contacts with Massachusetts were instrumental to Rand's alleged breach of the contract. Accordingly, Plaintiff fails to establish any basis for this Court's exercise of jurisdiction over Rand with respect to its breach of contract claim.

B.    Tort Claims

As Defendants discussed in their moving papers, in a tort case, the focus of the relatedness inquiry is on whether the defendant's contacts with the forum caused the injury or gave rise to the plaintiff's legal claim. United States v. Swiss American Bank, Ltd., 274 F.3d 610, 622 (1st Cir. 2001); see also Phillips Exeter, 196 F.3d at 289 (in a tort case, the court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action"); Massachusetts Sch. of Law, 142 F.3d at 35 (if the plaintiff asserts a tort claim, the court "customarily look[s] to whether the plaintiff has established 'cause in fact (i.e., the injury would not have occurred "but for" the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)'") (citing United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)). The relevant contact is that which occurs within the forum state. The in-forum effects of conduct *outside* the forum are insufficient to meet the relatedness requirement. Swiss American Bank, 274 F.3d at 625; Phillips Exeter, 196 F.3d at 291; Massachusetts Sch. of Law, 142 F.3d at 36.

As it did in connection with its contract claims, Plaintiff attempts to satisfy the relatedness test as applied to its tort claims on the basis of: i) Andre Bernard's allegedly false statements, communicated by telephone to Crown in Massachusetts, regarding Albena's inability to provide linings; and ii) Rand's mailing of invoices "regarding the quantity and price of the linings" to Crown in Massachusetts.[3] (See P. MOL at 9-11.) Each of these contacts was purportedly initiated by one or more of the Defendants in New York, not Massachusetts.

---

[3]    As discussed above, the records annexed to Mr. Graci's affidavit do not relate to any communications between the parties prior to May 2001, and the annexed invoices do not reflect charges for linings. The Court need not credit Plaintiff's unsupported allegations. See supra note 2.

Because Plaintiff cannot point to any in-forum activities by Defendants that relate to its tort claims, it invokes what is tantamount to the "effects test" adopted by the Supreme Court in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984).

In Calder, a reporter and editor for the *National Enquirer* wrote an allegedly libelous article about the entertainer Shirley Jones, who brought suit in California.  Calder, 465 U.S. at 784, 104 S.Ct. at 1484.  The reporter did most of his research in Florida, relying on telephone calls to sources in California for the information contained in the article.  Id. at 785, 104 S.Ct. at 1485.  Significantly, Calder "did not turn on the presence of physical, mail, or telephone contacts between the defendants and the forum."  Swiss American Bank, 274 F.3d at 623 (citing Calder, 465 U.S. at 787 n.6, 104 S.Ct. at 1485 n.6).  Rather, the Supreme Court held that it was proper for a court in California to exercise jurisdiction over the newspapermen "based on the 'effects' of their Florida conduct . . . ," which was "calculated to cause injury to [Ms. Jones] in California."  Calder, 465 U.S. at 789, 791, 104 S.Ct. at 1486-87, 1488.

Similarly, here, Plaintiff argues that it has met its burden of establishing relatedness based on the alleged injury to Plaintiff in the Commonwealth.  (See P. MOL at 11.)  Plaintiff's argument fails for the reasons enumerated by the First Circuit in Swiss American Bank.  There the court emphasized that "Calder's 'effects' test was adopted 'for determining *purposeful availment* in the context of defamation cases."  Id. at 623 (citing Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998)).  The court explained that in Calder, "[b]oth the in-forum publication and the in-forum injury were clearly related to the plaintiff's defamation suit, so the Supreme Court did not need to address the relatedness prong before proceeding to the purposeful availment inquiry."  Id. at 624.  The First Circuit held that the effects test "is a gauge for purposeful availment and is to be applied *only after the relatedness prong has already been satisfied*."  Id. (emphasis added); see also Levin v. Harned, 304 F.Supp.2d 136, 151 (D.Mass. 2003) (recognizing that court is "constrained by Swiss Am[erican] Bank from even considering the effects of the tortious conduct until after the relatedness prong has been established . . .").

The court in Swiss American Bank further emphasized that because the effects test "was specifically designed for use in a defamation case," it is unclear whether Calder applies to other torts. Swiss American Bank, 274 F.3d at 624. It also distinguished Calder as a case in which the actual tort, not just its consequences, occurred within the forum. Id. (comparing Calder to other cases, including Swiss American Bank, 191 F.3d at 37, in which tortious conversion or breach of contract occurred outside of the forum). Finally, the court reaffirmed the principle that the in-forum effects of extra-forum activities do not suffice to constitute minimum contacts for the purpose of the relatedness inquiry. Id. (citing, among other cases, Massachusetts Sch. of Law, 142 F.3d at 36).

As Defendants previously argued, their contacts with Massachusetts did not cause Plaintiff's alleged injury or give rise to its tort claims. Rather, Plaintiff's alleged injury arose from Defendants' purported conduct in New York, where they allegedly misrepresented that Albena could not supply linings for the overcoats that it was to manufacture for Crown,[4] and where Defendants allegedly converted Crown's money for their own use.[5] (See Bernard Aff. ¶¶ 6-7.) Thus, unlike Calder, the actual torts alleged by Plaintiff, as distinguished from the consequences of such torts, did not occur in the forum. Accordingly, Plaintiff's attempt to use

---

[4]    "A breach of fiduciary duty occurs where the fiduciary acts disloyally." Phillips Exeter, 196 F.3d at 291.

[5]    "The legal injury occasioned by the tort of conversion is deemed to occur where the actual conversion takes place." United States v. Swiss American Bank, Ltd., 191 F.3d 30, 37 (1st Cir. 1999). "[L]iability for conversion arises when one . . . intentionally and wrongfully exercises acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . ." General Electric Co. v. Halmar Distribs., Inc., 968 F.2d 121, 129 (1st Cir. 1992) (internal quotation marks and citations omitted); see also Massachusetts Eye and Ear Infirmary, 399 F.3d at 372 ("'Conversion requires the exercise of dominion or control over the personal property of another.'") (citation omitted). There is no dispute that Defendants received Plaintiff's payments in New York, where Defendants reside and conduct their business. Thus, any alleged conversion would have taken place in New York, not Massachusetts.

the effects test to meet the relatedness prong of the jurisdictional test is futile.[6]

II.     Purposeful Availment

　　　　Perhaps most ineffectual among Plaintiff's responses to Defendants' arguments is its treatment of the purposeful availment test.  In conclusory fashion, Plaintiff states initially that "the Defendants benefited from the voluntary contacts they had with Crown Clothing in Massachusetts so that it was reasonable for the Defendants to anticipate being haled into court in Massachusetts."  (P. MOL at 12.)  Whether one party benefits from its contacts with another – a likely occurrence in a contractual relationship –  has no bearing on whether the party purposefully availed itself of the privilege of conducting activities in the forum state.

　　　　Rather, as set forth in Defendants' initial memorandum of law, the purposeful availment test requires consideration of whether the defendant's contacts with the forum "'represent a purposeful availment of the privilege of conducting activities in [the forum], thereby invoking the benefits and protections of [its] laws and making the defendant[s'] involuntary presence before the state's courts foreseeable.'"  Phillips Exeter, 196 F.3d at 292 (quoting United Elec., Radio and Mach. Workers, 960 F.2d at 1089) (second and third alterations in original).  "The function of the purposeful availment requirement is to assure that jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous contacts' with the forum states."  Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995) (citation omitted). "Without evidence that the defendant actually reached out to the plaintiff's state of residence to create a relationship – say, by solicitation [citing Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 716-17 (1st Cir. 1996)] – the mere fact that the defendant willingly entered into a tendered

---

[6]     Plaintiff's reliance on Murphy v. Erwin-Wasey, Inc., 460 F.2d 661 (1st Cir. 1972), and Levin v. Harned, 304 F.Supp.2d 136 (D.Mass. 2003), is misplaced.  Murphy, which primarily interpreted Section 3(c) of the Massachusetts long-arm statute rather than the Fourteenth Amendment's Due Process Clause, was decided well before the First Circuit's decision in Swiss American Bank and the Supreme Court's decision in Calder.  In Levin, the district court acknowledged that the case "presents difficult questions under the 'relatedness' step of the due process analysis," but determined that, as in Calder, the actual tort, not just the consequences, occurred within the forum.  Levin, 304 F.Supp.2d at 150.  For the reasons discussed above, the same cannot be said here.

relationship does not carry the day." Phillips Exeter, 196 F.3d at 292; see also Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 933 (1st Cir. 1985) ("[T]he fact that a nonresident enters into a single commercial contract with a resident of the forum state is not necessarily sufficient to meet the constitutional minimum for jurisdiction.").

Plaintiff fails to establish that Defendants reached out to Crown in Massachusetts to initiate any agreement. See Phillips Exeter, 196 F.3d at 292. Not only do the proffered telephone records not relate to any communications between the parties prior to May 2001; they do not reflect the initiation or solicitation of any contractual relationship by Defendants.[7]

Moreover, there is no dispute that contract performance took place outside of Massachusetts. Randcore located Albena in Bulgaria, where it supervised the production of the coats manufactured for Crown. (Bernard Aff. ¶¶ 4-5, 14.) Rand was to purchase the linings in Bulgaria and deliver them to Albena there. (Bernard Aff. ¶ 6.) Plaintiff does not contest any of these facts.[8] Insofar as Mr. Bernard traveled to Boston on a handful of occasions over the past decade, those trips were made for a limited purpose and were merely incidental to Randcore's performance of its contractual duties. (Bernard Aff. ¶ 14; Bernard Reply Aff. ¶ 13.)

In their prior memorandum of law, Defendants discussed at great length the similarities between this case and Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111 (1st Cir. 1997). (See Defendants' memorandum of law submitted in support of their motion to dismiss ("D. MOL"), dated January 24, 2005, at 12-14.) Plaintiff offers no response. Instead, it focuses again on the invoices sent to Crown in Massachusetts and Defendants' telephone and e-mail communications with Plaintiff. (See P. MOL at 13.)

---

[7]    In this regard, it is worth emphasizing that the burden of proving every fact required to satisfy the jurisdictional test rests on Plaintiff. Swiss American Bank, 274 F.3d at 618; Boit, 967 F.2d at 675.

[8]    While Mr. Graci alleges that Mr. Bernard sent samples of garments manufactured by Albena to Crown in Massachusetts, Graci Aff. ¶ 9), Plaintiff omitted from its papers bills of lading which would confirm that Albena sent samples of merchandise directly to Crown. Neither Rand, Randcore nor Mr. Bernard were ever authorized to send garments to Crown, nor did they have the personnel to ship sample merchandise. (See Reply Affidavit of Andre Bernard ("Bernard Reply Aff."), sworn to on March 17, 2005, submitted in further support of Defendants' motion, at ¶ 10.)

In <u>Lyle</u>, the First Circuit affirmed the district court's dismissal of the action for lack of personal jurisdiction notwithstanding the defendant's regular communication with Lyle in Massachusetts. <u>Lyle</u>, 132 F.3d at 112. It concluded that the defendant's contacts with Massachusetts were "purely incidental" and therefore insufficient to satisfy jurisdictional requirements. <u>Id.</u> at 113. Similarly, here, Defendants' contacts with Massachusetts were merely attendant to their business with Crown. "The very exiguousness of these contacts suggests that [Defendants] could not reasonably have foreseen [their] susceptibility to suit" in a Massachusetts court. <u>Phillips Exeter</u>, 196 F.3d at 292; <u>see also</u> <u>CVS Corp. v. Taubman Ctrs., Inc.</u>, 225 F.Supp.2d 120, 126 (D.R.I. 2002) (Michigan-based leasing agent was not subject to personal jurisdiction in Rhode Island even though it had ongoing correspondence with and sent invoices to plaintiff in Rhode Island, where agent did not reach out to plaintiff in Rhode Island to solicit business and its correspondence with plaintiff was "simply a necessary means of performing" under its contracts). Accordingly, Plaintiff fails to show that Defendants purposefully availed themselves of the privilege of conducting activities in Massachusetts.

III.    <u>Reasonableness</u>

In light of Plaintiff's failure to meet its burden with respect to the relatedness and purposeful availment prongs of the jurisdictional test, the Court need not proceed to the reasonableness element of the inquiry. <u>See, e.g.</u>, <u>Phillips Exeter</u>, 196 F.3d at 292 (declining to assess whether asserting jurisdiction would be reasonable after determining that plaintiff failed to make a prima facie showing of relatedness and purposeful availment). In any event, for the reasons discussed in Defendants' previous submissions, an analysis of the "gestalt" factors leads to the conclusion that the exercise of personal jurisdiction over the Defendants in this Massachusetts court would be unreasonable. (<u>See</u> D. MOL at 15-18.)

CONCLUSION

For all of the foregoing reasons, this Court's exercise of personal jurisdiction over the Defendants would offend the principles of due process. Accordingly, the Court should dismiss the claims against Defendants for lack of personal jurisdiction, and grant such other and further relief as the Court deems just and proper.

Dated: March 25, 2005

Respectfully submitted,

Defendants Randcore, Inc., Rand International Trading, Inc., Andre Bernard, and Ronald Bernard

By their Attorneys,

SUGARMAN, ROGERS, BARSHAK
 & COHEN, P.C.

By:    /s/ Jeffrey S. Stern
                       Jeffrey S. Stern
        101 Merrimac Street
        Boston, Massachusetts 02114
        (617) 227-3030
        BBO No. 479460

<u>CERTIFICATE OF SERVICE</u>

I, Jeffrey S. Stern, hereby certify that on the 25th day of March, 2005, I caused the within reply memorandum of law to be served by mailing a copy thereof, postage prepaid, to the following counsel of record:

John C. Wyman, Esq.
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, Massachusetts 02110

Gary R. Greenberg, Esq.
Greenberg Traurig
One International Place
Boston, Massachusetts 02110

/s/ Jeffrey S. Stern
Jeffrey S. Stern